BALTIMORE & PHILADELPHIA STEAM-
BOAT CO. et al. v. NORTON, Deputy
Commissioner, et al.

No. 4457.

Circuit Court of Appeals, Third Circuit.
March 25, 1931.

Louis Wagner, Thomas Clary, and R. A. Smith, all of Philadelphia, Pa., for appellants.

Paul Freeman, Asst. U. S. Atty., and Geo. C. Krewson, both of Philadelphia, Pa. (Walter W. Warwick, of Washington, D. C., of counsel), for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge.

Emil Bruno Gube, an employee of the Baltimore & Philadelphia Steamboat Company, on descending from a boat of this company, then in navigable waters of the United States, fell and sustained an injury to his left arm. He instituted proceedings against his employer for compensation under the Longshoremen's and Harbor Workers' Compensation Act, approved March 4, 1927, 44 Stat. 1424 (33 USCA §§ 901–950). The Maryland Casualty Company was joined as insurance carrier for the Steamboat Company.

At a hearing before the Deputy Commissioner for the proper Compensation District it appeared that the claimant was totally disabled for a period of 34 weeks and that, thereafter, he was permanently disabled by a partial loss of use of his arm, estimated at 40%. It also appeared that his regular weekly wages were $31.50 and his average weekly wages including wages for overtime were $36.06. On the Deputy Commissioner's award of compensation for 146 weeks at the weekly rate of $24.04, being two-thirds of the average weekly wages, the Steamboat Compa-

ny and Casualty Company filed a bill for review in the District Court of the United States averring that the Deputy Commissioner should not have included the claimant's overtime earnings in the wage factor of compensation and that instead of the claimant being entitled to 146 weeks' compensation, he was entitled to compensation for only 125.6 weeks. The District Court sustained the findings and award of the Deputy Commissioner both in respect to the amount of weekly compensation and the period of payment. 40 F.(2d) 530. The Steamboat Company and the Casualty Company join in this appeal. Three questions are involved: two raised by the appellants and one arising out of an inquiry of our own as to whether the questions are moot in view of the fact that the Steamboat Company, the employer, has paid its injured employee the compensation awarded.

■ Of course if the questions in this case were moot we should not decide them. If moot as to one party, we think they are not as to the other. True, the Baltimore & Philadelphia Steamboat Company paid its employee the compensation awarded, as it was bound to do, without awaiting an appeal. Section 21 of the act (33 USCA § 921). If the Steamboat Company were the only party to the action the question might, conceivably, be moot. But there are two parties; the Steamboat Company, the principal, and the Maryland Casualty Company, the assurer on the obligation to the employee. The Casualty Company is a real party here. It still desires and has a right to demand that the question of proper payment as affecting its liability to its principal be decided. If the Steamboat Company unwisely or improvidently paid a compensation claim which in law it was not required to pay, that is not a reason why the Surety Company should pay the Steamboat Company and, similarly, that is not a reason why the Surety Company should not have the question tried out and decided so as to fix its legal liability. We hold the questions are properly here for review; and they are two, both dealing with compensation, one reckoned in dollars and the other in weeks.

■ The first is whether in estimating the compensation to be paid weekly to the injured employee his weekly wages ($31.50) under a contract as to days and hours should control, or the amount of actual wages earned and paid ($36.06) which include not only his weekly wages but also wages earned outside the time of the contract. Stated differently, the question is whether the compensation should be based on regular weekly wages fixed by contract of employment or on actual weekly wages earned for a period long enough to determine an average. As the statute accords the injured employee compensation for wages lost, we think the compensation should conform to actual wages which, but for the accident, he would have earned. And so, evidently, thought the learned district judge, whose finding in this regard is affirmed.

■ The next question calls for an interpretation of the vital part of the Longshoremen's and Harbor Workers' Compensation Act because it is the money part of the act. The purpose of this act, as its title denotes, is to provide compensation to an injured longshoreman for his "disability," or incapacity occasioned by an injury, to earn the wages he had been receiving. Section 2, subd. 10 of the act (33 USCA § 902, subd. 10). The provision of the act pertinent to this case is section 8 (33 USCA § 908) which provides a method of computing such compensation to employees who have suffered injuries of different kinds resulting in disabilities of different characters and different qualities. First stating these differences in injuries and in their characters and qualities, the statute then deals with an employee's compensation (in dollars) for lost wages reckoned by weeks. As the statute speaks in figures rather than in words, we find it difficult to construe its terms in the abstract and feel compelled to follow its own structure and devote our interpretation more to figures than to words, believing that out of the figures which the Congress used and out of the order in which it used them its intent will stand out clearly and, we think, with certainty.

Section 8 provides compensation for different degrees of disability:

(a) Permanent total disability;

(b) Temporary total disability;

(c) Permanent partial disability; and

(d) Temporary partial disability.

We are not concerned in this case either on the facts or in interpreting the law with (a) permanent total disability or (d) temporary partial disability. The claimant was totally disabled for a time and partially disabled for all time. Therefore we are concerned only with (b) and (c), temporary total disability and permanent partial disability, for it is manifest that these two things can happen, as they did in this case, to one individual as a result of the same accident.

Subsection (b) of section 8 of the act, 33 USCA § 908, subsec. (b), dealing with temporary total disability alone, provides that:

"In case of disability total in character (which means that the man is wholly incapacitated to earn a wage) but temporary in quality (which means that though total for a time, the disability may later become partial or disappear altogether) 66⅔ per centum of the average weekly wages shall be paid to the employee during the continuance thereof."

But a man may suffer a permanent partial disability without suffering a temporary total disability. In that event subsection (e) of section 8, 33 USCA § 908, subsec. (e), pars. 1 and 19, provides:

"In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages, and shall be paid to the employee as follows:

"(1) Arm lost, three hundred and twelve weeks' compensation. * * *

"(19) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member [in this case an arm] may be for proportionate loss or loss of use of the member. [In this case found to be 40 per centum.]"

Yet a man may suffer both a temporary total disability, which is sometimes referred to as the healing period, and a permanent partial disability as in this case. On that combined event paragraph 22, subsection (e) of section 8, 33 USCA § 908, subsec. (e), par. 22, provides that:

"In case of temporary total disability and permanent partial disability, both resulting from the same injury, if the temporary total disability continues for a longer period than the number of weeks set forth in the following schedule, the period of temporary total disability in excess of such number of weeks shall be added to the compensation period provided in subdivision (e) of this section: Arm, thirty-two weeks. * * * *"

"The compensation provided by subdivision (e)" for permanent partial disability to an arm is, as we have seen, 312 weeks. The excess of temporary total disability over the 32 weeks provided by paragraph 22 of subsection (e) is in this case 2 weeks, making 34 weeks of temporary total disability. As only the "excess" of 32 weeks is to be "added" to the 312 weeks, it is clear that the 32 weeks healing period is included in the 312 weeks' compensation period for loss of an arm or of its use. Adding the excess of total disability

(2 weeks) to the latter period, the figures in this case stand as follows: 312 weeks plus 2 weeks equal 314 weeks. This figure of 314 weeks now includes disability of both kinds. Compensation for each measured in weeks must be separated in this total because the law deals with them differently. The 34 weeks for temporary total disability must be picked out and set aside. To determine the period of payment for permanent partial disability the 34 weeks of temporary total disability must be deducted from the total of 314 weeks. This leaves 280 weeks compensation for permanent partial disability. This is for the reason that temporary total disability stands alone; the disability being total, compensation is allowed for it, without deduction or apportionment (section 8, subsec. (b), to the full ⅔ of the man's weekly wages. But compensation for the remainder of the term (280 weeks), which represents the weeks following temporary total disability and constitutes all the period of permanent partial disability for which compensation is allowed, is subject to apportionment of loss provided by paragraph 19 of subsection (e) of section 8 which has in this case been determined to be 40% of the use of the arm. Now it is just here that, for the first time, apportionment of loss enters into the calculation, and it enters, as it must, at the place in the calculation where subsection (e) (19) puts it, namely; under the heading of "permanent partial disability" (280 weeks). Thus there are two separate and distinct figures in the calculation, each a resultant of different subsections of section 8 in question. One, under subsections (b) and (e), (temporary total disability), is 34 weeks, on which the claimant gets all the law allows without deduction or apportionment, and the other under subsection (e), (permanent partial disability), where he gets only 40% of what the law allows if the disability were total, whether temporary or permanent.

If this method of computation were not pursued but that of the appellants followed, namely; adding the two weeks excess healing period (e) (22) to the total 312 weeks (e) (1), and then apportioning the sum of these items, there would be an apportionment of 40% on the 34 weeks of temporary total disability with respect to which the statute requires no apportionment.

This would defeat the intent of the Congress to allow full compensation when the disability is total and for "the continuance thereof." The practical or money difference in the two theories of calculation is the dif-

ference between 146 weeks and 125.6 weeks and is more clearly disclosed by the following tables:

We figure thus:

| | | |
|---|---|---|
| Allowance by Section 8 (b) and C-22 for temporary total disability | | 34 weeks |
| Allowance by Section 8 (c) (1) for loss of arm | 312 weeks | |
| Add excess of healing period allowed by Section 8 (c) (22) | 2 weeks | |
| Total compensation time | 314 weeks | |
| Less temporary total disability period | 34 weeks | |
| Permanent partial disability period | 280 weeks | |
| 40% of 280 weeks as per Section 8 (c) (19) for proportionate loss of use of arm | | 112 weeks |
| Total | | 146 weeks |

The appellants figure thus:

| | | |
|---|---|---|
| Schedule compensation time, Section 8 (c) (1) | 312 weeks | |
| Excess allowed by Section 8 (c) (22) | 2 weeks | |
| 40% of total | 314 weeks | 125.6 weeks |

■■ The appellants interpret the statute, and, indeed, some authorities interpret a similar state statute, on the theory that although a man may suffer two kinds of injury from the same accident, he cannot claim compensation for both temporary total disability and permanent partial disability, but must elect the compensation payable for one or the other as suits him best. As we read the statute we see in it the plain intent of the Congress to provide compensation for five situations, four occurring with single disabilities as in section 8 (a), (b), (c) and (d), and the fifth, (c) (22), 33 USCA § 908, subsecs. (a–d), and (c), par. 22, where temporary total disability and permanent partial disability occur jointly when both result from the same injury. Following that intent, it is clear that, two kinds of disabilities having been suffered, the compensation applicable to each should be paid so long as, within the statute's limitations, disabilities of these two characters continue respectively; and it is equally clear that as the statute distinguishes between the character of the disabilities and the time of their duration, the compensation should conform to each respectively; and that where, as in temporary total disability, the statute provides no deduction or apportionment, none should be made, and in the other (permanent partial disability) where it provides an apportionment, one should be made yet only for the period of weeks to which compensation for disability of that "character" relates.

Another sentence in paragraph 22 of subsection (c) of section 8 which it is thought has a bearing on the interpretation of the statute is the following:

"In any case resulting in loss or partial loss of use of arm * * * where the temporary total disability does not extend beyond the periods above mentioned [32 weeks] for such injury, compensation shall be limited to the schedule contained in subdivision (c)."

This provision, it would seem, was inserted to meet a situation not covered by the previous paragraphs and subsections. However that may be, the temporary total disability in this case did extend beyond the period (32 weeks) previously provided and, accordingly, the quoted paragraph has no bearing on the matter in hand.

The decree of the District Court dismissing the bill is affirmed.