THOMAS F. SHORTALL *vs.* BROWN & SHARPE MANUFACTURING COMPANY.

JULY 9, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Capotosto, J. This is a petition by an employee for partial compensation and medical expenses under the workmen's compensation act, general laws 1938, chapter 300. The case is before us on the employer's appeal from a decree of the superior court granting the petition.

Respondent's contentions require that we first set out with some particularity the rather confusing circumstances in the record under consideration. The evidence shows that on January 26, 1940 the petitioner, while lifting a heavy piece of cast iron in the course of his work, suffered a "strained back" by accident. Compensation on the basis of an average weekly wage of $44.82 was duly paid him under a preliminary agreement dated February 27, 1940. On April 15, 1940 he returned to work as a "scraper" which also required the

lifting of rather heavy cast-iron pieces. On May 5, 1941 he signed a settlement receipt. Thereafter he worked steadily without medical attention although with occasional discomfort.

On or about March 8, 1944, as he was lifting a piece of cast iron, petitioner's foot slipped and he bumped his knee against the bench at which he was working. At the same time he also felt "a kink in my back—I felt my back snap." He immediately reported this accident to the foreman and was given first-aid treatment to the knee by a doctor in respondent's dispensary. The next day he consulted his own doctor, William A. Horan, who, after various examinations and tests, operated on him in May 1944 for a "ruptured disc." At the time of this second accident petitioner's weekly wages were at the rate of $1.55 an hour for a 50-hour week, or $77.50.

On April 7, 1944 the petitioner filed a petition with the department of labor seeking a review of the 1940 preliminary agreement on the ground of decreased earning capacity allegedly due to a recurrence of the "disability suffered originally on January 26, 1940," namely, a strained back. Subsequently, on September 12, 1944, he apparently abandoned that petition and entered into a second preliminary agreement which provided for the payment of compensation for total incapacity at an average weekly wage of $44.82. This agreement gave the date of accident as January 26, 1940, the date of the second incapacity as April 13, 1944, and the cause, nature and location of injury as a strained back. The parties agree that all payments for compensation under this agreement and for medical expenses were paid up to the time the petitioner returned to work for the respondent as a guard on November 6, 1944. No settlement receipt was signed by him on this occasion.

Following the employee's return to work as a guard the respondent stopped compensation payments, and on November 10, 1944 filed a petition asking that it be relieved of such payments as the petitioner had returned to work at

the same or greater rate of wages earned prior to his accident of January 26, 1940. While this petition was pending the petitioner, on April 6, 1945, brought a petition whereby he sought reimbursement for additional medical expenses in connection with the 1940 accident.

These two cases were heard together *de novo* in the superior court on appeals by the respective parties from the decisions of the director of labor. On June 18, 1946 that court entered a decree granting the employer's petition to discontinue payment of compensation on the ground that the employee's then loss of earning capacity was not due to the accident of 1940, and on the same date it entered another decree denying and dismissing the employee's petition for additional medical expenses on the ground that such expenses for the 1940 accident had been fully paid in accordance with the provisions of the act then in force. No appeals were taken to this court from the entry of these decrees, which therefore became final.

We now come to the petition in the instant case. On February 27, 1946 the petitioner brought the present original petition for partial compensation alleging therein that on or about March 9, 1944 he sustained an "intervertebral disc fracture" by accident arising out of and in the course of his employment as a "scraper" for the respondent. We recall here that after the second accident of March 1944 the petitioner returned to work for the respondent as a guard in November of that year. His pay for that work, according to the evidence, was at the rate of 79 cents an hour for a 55-hour week and he worked in that capacity until he was laid off on February 19, 1945. Within a few weeks thereafter he secured employment as an "oiler" with the Gorham Manufacturing Company at 75 cents an hour for a 53-hour week. When the present case was heard in the superior court his rate of pay had been increased to 97 cents an hour.

Doctor Horan, who attended the petitioner for his injury in the accident of March 1944, testified that he had

treated him for a strained back in 1940 and that at that time his symptoms were not consistent with an injury to the spine. He next saw him on March 11, 1944 when the patient's history was taken by his secretary. The date of the second accident and injury to petitioner's knee and back appeared therein as January 1, 1944. The hospital records connected with his operation in May of that year and the doctor's report of the following September to the respondent contained the same date. With reference to this matter, the doctor testified that he was concerned with the condition of his patient and not with the date of the accident.

Doctor Horan's opinion was that the petitioner suffered a "ruptured intervertebral disc" as a result of the accident in 1944. His testimony on this point was that the "bump on the knee just caused a twisting which caused a disturbance of a disc" and that such condition "irritated the sciatic nerve" thereby completing "the cycle." In his judgment the petitioner could do only light work for some indefinite time. In cross-examination Dr. Horan's attention was called to his report of September 1, 1944 to the director of labor in which he stated that when the petitioner came to him in March 1944 "it was apparent from his history that the original pain had never quite subsided and that he suffered an *exacerbation* five or six months before he came." (italics ours) Respondent strongly relies on that language but fails to note that immediately following it the report states: "Investigation showed that he had a Ruptured Disc. Operation confirmed this diagnosis and removed the cause of his disability."

Upon a hearing *de novo in* the superior court of the petition in the instant case a decree was entered which contains, among others, the following findings of fact: That the petitioner sustained a compensable injury by accident in March 1944 when "he slipped * * * and he struck his knee, felt a twist in his back and subsequently a ruptured intervertebral disc was discovered"; that at the

time of such injury his average wage was $77.50 a week for a 50-hour week; that when he returned to work for the respondent as a guard on November 6, 1944 his average wage was $55 a week; that on March 1, 1945 he was employed by the Gorham Manufacturing Company, where he has continued to work since that time as an "oiler" at an average wage of $50 a week. It was therefore decreed that the respondent pay compensation for partial incapacity from the time the petitioner returned to work following the injury of March 1944, and further that it pay all medical expenses "not already paid" as a result of said injury.

Respondent's main contention is that the issues of cause of incapacity, average weekly wages, and medical expenses in the case at bar were res adjudicata by the aforementioned final decrees of the superior court of June 18, 1946, which were based on the agreement of September 12, 1944. We cannot agree with this contention.

The issues raised by the petitions which resulted in the entry of the final decrees of June 18, 1946 were quite different from those in the instant case. The petitioner here is prosecuting an original petition based on a new injury for partial compensation under the act irrespective of any agreement. His claim now is that in March 1944 he had a second accident in which he suffered a rupture of an intervertebral disc with aggravation of the injury that he had sustained in the first accident of 1940. The cases terminated by the final decrees of June 18, 1946 presented no such issues and therefore those decrees are not determinative of the questions in the case at bar.

The respondent makes no claim and we find no evidence in the record before us that the petitioner, whom the trial justice in his decision characterized as a "thoughtful, deliberate painstaking man," was a malingerer or that he intended to practice any fraud on the respondent. Furthermore, the respondent does not deny that the petitioner had a second accident in 1944; nor does it claim that such accident

was considered in any proceeding prior to the instant case with a finding by the trial justice as to whether or not it happened in March of that year. We therefore find no merit in its contention of res adjudicata.

Respondent next contends that the petition in the instant case, which was filed February 27, 1946, should have been denied and dismissed because it was not brought "within 2 years after the occurrence of the injury," as provided in article III, §17, of the act. The conflicting legal evidence as to the date of injury placed upon the trial justice the duty of determining its weight and credibility. In discharging this duty he found that the second accident and injury resulting therefrom occurred on March 7, 1944. In the absence of fraud, and there is none in this case, his finding is conclusive under the act. In view of such finding it becomes unnecessary to further consider respondent's present contention, as the petition now before us was brought within the time specified in the act.

Respondent further contends that the finding of the trial justice that in March 1944 the petitioner was earning $77.50 a week for working an average of 50 hours weekly has no materiality whatever in this proceeding. It is argued that the petitioner was bound, so far as wages are concerned, by his agreement of September 12, 1944, wherein he related the cause of his incapacity to the first accident in 1940 and fixed his average weekly wage at $44.82.

We have already stated that the agreement upon which the respondent rests this contention is of no force and effect in the circumstances of this case. Since the petition now before us is an original one for partial incapacity resulting from a new compensable injury in March 1944, it was incumbent upon the trial justice to determine petitioner's average weekly wage at the time of such injury in order to ascertain the amount of the compensation that he was entitled to under the act. There is no merit in the contention under consideration.

Respondent's final contention, as we understand it, is that there is nothing in the law which authorizes considering "overtime pay" in computing weekly wages, and therefore such wages should be determined on the basis of a 40-hour week. This is a clear misconception of the pertinent provisions of our workmen's compensation act. Whether an employee's loss of earning capacity be total or partial, compensation for such loss is based upon his "average weekly wages, earnings or salary." G. L. 1938, chap. 300, art. II, §§10, 11. Section 13 of that article, in so far as material, then provides: "The 'average weekly wages, earnings or salary' of an injured employee shall be ascertained as follows: (a) 'Average weekly wages, earnings or salary' shall mean the *total earnings* of the injured employee received from the employer in whose service he is injured * * * ." (italics ours)

The act speaks in unequivocal language. It plainly provides that an injured employee is entitled to receive compensation on the basis of his "total earnings," which term when used in connection with labor means the reward that he has gained by labor or personal services irrespective of the standard by which such earnings are measured. For similar construction, see *In re Martin*, 33 Haw. 412; *Baltimore & Philadelphia Steamboat Co.* v. *Norton*, 48 F.2d 57; *Clark* v. *Forest Lumber Co.*, 9 La. App. 639. Horovitz on Workmen's Compensation 266. If the total earnings of an injured employee come from the employer in whose service he is injured, it is immaterial whether such earnings are the result of a regular weekly wage or whether they represent actual weekly earnings for ordinary working hours plus pay for services performed outside the usual hours of labor, commonly designated as "overtime pay." Furthermore, we find nothing in the act to warrant respondent's assumption in its contention that the total earnings of the injured employee shall be limited to a period of 40 working hours a week.

The respondent's appeal is denied and dismissed, the

decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Eugene J. Sullivan, Jr.,* for petitioner.

*Worrell and Hodge, Lee A. Worrell,* for respondent.