No. 2465
Second Circuit

CHARLES L. WILSON v. LOUISIANA
CENTRAL LUMBER COMPANY

(December 10, 1925, Opinion and Decree)
(February 8, 1926, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 154, 159.**

Under Section 8, Subsection 3 of Act 20 of 1914 as amended by Act 216 of 1924, the Workmen's Compensation Law, "the term 'wages' as used in Act 20 of 1914 is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury".

2. **Louisiana Digest—Master and Servant —Par. 160 (I); Appeal—Par. 625.**

The finding of the District Court in a Workmen's Compensation case brought under Act 20 of 1914 as to a matter of fact being clearly correct is affirmed.

Appeal from the Eighth Judicial District Court of Louisiana, Parish of Caldwell, Hon. F. E. Jones, Judge.

This is a suit under the Workmen's Compensation Law, Act No. 20 of 1914 as amended by Act 216 of 1924, brought by an injured employee for total disability under Section 8, Subsection 1 (b) of the Act, and the medical expenses under Section 8, Subsection 5 of the Act. There was judgment for total disability for twelve weeks only, and partial disability not exceeding 288 additional weeks. Defendant appealed, and plaintiff moved to amend the judgment by increasing the allowance but did not complain of the disallowance of the claim for medical expenses.

Judgment amended and reduced.

Long and Crow, of Shreveport, attorneys for plaintiff, appellee.

Thornton, Gist and Richie, of Alexandria, attorneys for defendant, appellant.

CARVER, J. This is a suit under the Workmen's Compensation Law, Act 20 of 1914 as amended by Act 216 of 1924.

On January 29, 1925, plaintiff was struck by a log rolling off of a log wagon and claims $12.87 per week for 400 weeks for total disability and $250.00 for medical expenses.

Defendant admits that plaintiff received the injuries for which it is liable but alleges that they were slight and not sufficient to incapacitate him longer than six weeks.

It further alleges that it furnished all needed medical attention and has been ready to pay compensation for the time plaintiff was disabled but that he has failed to call for or accept the same.

It also claims that compensation should not be fixed on the basis of a daily wage of $3.30, as alleged by plaintiff and adopted by the District Judge, but on the basis of a wage of $2.75 per day, the amount paid to plaintiff at the time he was injured.

The District Judge allowed $12.87 a week for total disability for twelve weeks and $6.43 a week for partial disability during such disability but not exceeding 288 additional weeks.

Defendant appealed and plaintiff moves to amend the judgment by increasing the allowance to $12.87 a week and the period to 400 weeks. Plaintiff does not complain of the disallowance of the claim for medical expenses.

The District Judge filed a written opinion as follows:

"In this case the plaintiff seeks to recover damages for the injury alleged to have been sustained by him on the 29th day of January, 1925, while in the employ of the defendant company, the Louisiana Central Lumber Company, and while in the discharge of his duties. The evidence discloses that the plaintiff on the 29th day of January received an injury by a log falling from a wagon and hitting him on the back and at least fracturing two ribs

on the right side. Prior to this accident in January, 1925, the plaintiff, in 1913, suffered an accident and as a result of which he had a hunch back at the time of his injury on the 29th day of January, 1925. Evidence also shows that prior to the 29th day of January, 1925, the plaintiff did hard manual labor by swamping and hauling logs from the forest of the defendant company to its tram roads, and since the latter accident the plaintiff has not been in the employ of the defendant company but has performed labor for one J. W. Harris. There is no question but that the plaintiff did receive a severe injury on the 29th of January, and according to the testimony of one Dr. Richardson it would take two or three months for the plaintiff to recover from this accident sufficiently for him to return to work. All of the doctors who have testified in the case admit that the plaintiff is in bad shape, taking into consideration that he also suffered a severe accident in 1913. The plaintiff, according to his own testimony, is able to do at least fifty per cent of the work that he originally did. The court is of the opinion that the plaintiff is entitled to compensation.

"It seems that the plaintiff had hauled logs for the company at a price of three dollars and thirty cents per day except on the particular day that he received the injury, at which time he was only drawing two dollars and seventy-five cents per day, as he was acting as swamper. His general employment was that of a log hauler and not as a swamper, but on account of the teams not being in condition to work on this particular day he was swamping, and the court feels that the amount of compensation should be based upon three dollars and thirty cents and not upon two dollars and seventy-five cents, which was just special for that day.

"From the testimony the plaintiff should have sixty-five per cent of his compensation as being totally disabled from work for a period of twelve weeks, then the court feels that the plaintiff had sufficiently recovered, that he was able to do a certain amount of work, according to the testimony of plaintiff. The testimony on this point shows that he is not able to do heavy lifting but can drive teams, plow and hoe and is incapacitated to the amount of fifty per cent. As to how long this incapacity will continue, the court is not able to determine at this time, but thinks that the plaintiff is entitled to recover not to exceed three hundred weeks sixty-five per cent of the difference in his original earning capacity and his present earning capacity, and the court fixes his present earning capacity at fifty per cent of his original earning capacity. That he should draw $12.87 for a period of twelve weeks and then draw $6.43 per week not to exceed three hundred weeks in all."

Defendant's counsel in this court complains that the District Judge ignored the testimony of the physicians some of whom testified, more or less confidently, that, in their opinion, plaintiff was not, at the time they examined him, a few days before the trial, suffering from any disability as a result of the accident of January 29, 1925.

Three of these physicians based their testimony on a physical examination made on May 14, 1925, and an x-ray picture made about the same time.

Of course the physical examination did not discover the fracture of the ribs, the bones having at that time completely united. The picture also failed to disclose it. The testimony of Doctor Rand who took the picture shows that part of it was indistinct. It is not clear whether he means the part showing the ninth and tenth ribs or not. We are satisfied though from the picture taken about a week previously by Dr. Adair and also from the testimony of Dr. Richardson who treated plaintiff about two hours after the accident that the ribs were fractured. The testimony of the physicians, too, is based in part upon their belief that plaintiff could not by reason of his hunch back have done hard manual labor previous to the injury of January 29, 1925. The testimony of plaintiff, though, and that of Jessie Powell, Oliver Franklin and Cicero Franklin, fellow workmen, satisfies us that before said accident plaintiff could and did do hard manual labor.

Plaintiff testified that he worked for this defendant from in September, 1923, to the

date of the accident, doing an able man's work without pain, except that he got tired but says that others complained the same as he did; and that he did his work in the usual way with the usual degree of getting tired. Defendant made no attempt to contradict his testimony which, as said above, was corroborated by Jessie Powell, Oliver Franklin and Cicero Franklin.

Again, some if not all of the physicians seem to exclude from consideration the plaintiff's claim that he suffered pain when he attempted to do hard work since the accident. Doctor Peters says:

"Q. Now, doctor, assuming that this party did do the hardest kind of manual labor—loading logs, logging, hauling lumber and timber on and before January 29, 1925, without any pain, and without any extra exertion, and since the injury on January 29th he had been unable to do any manual labor without the greatest of pain, would you say that this recent injury had any effect on it?

"A. If such facts were established beyond any doubt, the natural inference would be that he did. There is a tendency for symptoms to be correlated to an injury like that, and we based our opinion more on general deductions from what we find, and on physical examination, rather than what a patient claims.

"Q. I will ask you, assuming that it is a fact that this person was able to do all kinds of hard work?

"A. Assuming that fact, I would say that it did, but I do not assume that fact, except for the reasons of answering the question. I am not positive."

From their standpoint the physicians may be justified in ignoring or excluding from consideration the pain which a patient being examined claims to suffer; but the law makes the injured party a competent witness and where they testify that they do suffer pain we are compelled not indeed to take their testimony without question but to consider it and to give it such weight as we think it entitled to in view of all the other evidence in the case, and especially in view of the apparent candor or want of it disclosed by the testimony of the witness as a whole.

In accepting the testimony of the plaintiff in this case respecting the amount of work he has been able to do since the accident, and the pain suffered if he attempts to do hard work such as he did before the accident, we cannot say that the District Judge manifestly erred.

Plaintiff testifies that since the accident he has hauled lumber two or three days, hauled logs two or three days, and plowed for several pieces of days, but says that in the hauling he simply drove the teams, other parties loading and unloading the wagons, which he was unable to do.

Jessie Powell to some extent corroborates this testimony as to other parties doing the loading and unloading, and says "I have been working with him and he is absolutely unable to do a man's work according to my ability"; and, also "he was with me trying to haul logs but he only done the driving and I done all the heavy work".

Considering all the testimony in the case we do not find any error in the District Judge's conclusion that plaintiff was entitled not only to compensation for total disability for twelve weeks but also to compensation for partial disability on the basis of fifty per cent reduction in earning power for an additional 288 weeks.

We think, though; the Judge erred in basing the compensation on a daily wage of $3.30 instead of a daily wage of $2.75. As said by the District Judge, his general employment was that of a log hauler, the pay of which position was $3.30 per day; on the day of the accident he was working as a swamper, the pay of which was $2.75 per day.

The law provides as follows, Section 8, Subsection 3:

"The term 'wages' as used in this act is defined to mean the daily rate of pay at

which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury * * *."

The proof shows that according to the custom of defendant's mill, employees were sometimes shifted from one job to another job but were paid the wages applicable to the particular job actually worked at. Under this custom we think the "contract of hiring in force at the time of the injury" was for plaintiff to receive $3.30 per day when hauling and $2.75 per day when swamping. Having been injured, therefore, when swamping, his wages must be figured at those of a swamper. In some employments the compensation is based in part on the danger of the employment. If a workman whose regular employment was less hazardous is temporarily shifted to a job more hazardous, we think it would be unfair to him upon being injured while at work at the more hazardous job to base his compensation not on the wages of that job but on those of the less hazardous one. If this be correct, and we are satisfied it is, then, of course, the converse of the proposition is also true.

For these reasons it is decreed that the judgment of the lower court be amended by reducing the allowance made to plaintiff for total disability from $12.87 a week to $10.72 a week and by reducing the allowance for partial disability from $6.43 per week to $5.36 per week; and as thus amended it is affirmed.