## No. 370

### First Circuit

### CLARK v. FOREST LUMBER CO.

(December 4, 1928. Opinion and Decree.)
(January 9, 1929. Rehearing Refused.)
(February 11, 1929. Writ of Certiorari and Review Denied by Supreme Court.)

Mark C. Pickrel and Williams and Blackshear, of Oakdale, attorneys for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

MOUTON, J. Plaintiff was injured while in the service of defendant company and brings this suit against it under the Employers' Liability Act (Act 20 of 1914 as amended).

He alleges that he fell from a skidder boom which resulted in his injuries, causing permanent total disability to do work of any reasonable character.

Plaintiff avers that he was injured April 11, 1927, and that he has been paid by defendant company eleven 37/100 dollars ($11.37) per week from April 18, 1927, up to the 5th of April, 1928, the date this suit was filed. He claims that he was getting in wages at the time of the accident, six 25/100 dollars ($6.25) per day, totaling a weekly wage of forty-three 75/100 dollars ($43.75), entitling him to sixty-five (65%) per cent thereof as his average weekly wages amounting to twenty dollars ($20.00) per week during four hundred (400) weeks, the maximum allowance under the compensation statute.

Alleging that he had received only eleven 37/100 dollars ($11.37) weekly, from defendant, since April 18, 1927, to April 5, 1928, as aforesaid, plaintiff claims that he is entitled during that period of time to eight 53/100 dollars ($8.53) more per week, being the difference between eleven 37/100 dollars ($11.37) which he received, and twenty dollars ($20.00) per week which should have been paid him by defendant company, or a total of four hundred and seventy-four 65/100 dollars ($474.65), the equivalent thereof. He asks that the Court recognize his claim for this alleged difference from April 18, 1927, to April 5, 1928, and that thereafter his compensation be at the total of twenty dollars ($20.00) per week.

The lower court found that plaintiff had suffered a total permanent disability, gave him judgment at the rate of twenty dollars ($20.00) per week, not to exceed a period of four hundred (400) weeks, decreed that the compensation due on the date of the judgment be paid in a lump sum, and thereafter, that compensation be paid in weekly installments of twenty dollars ($20.00), the judgment to be subject to a credit of five hundred and sixty-eight and 50/100 ($568.50) dollars, as though paid April 2, 1928. Defendant has appealed.

An exception of prematurity was filed by defendant, grounded on paragraph B of Section 18, Act 85 of 1926.

Plaintiff, in his petition, alleged that he had not been paid the maximum compensation to which he was entitled under the law, and that defendant had refused to pay it.

The foregoing allegations were denied by

defendant prior to the time fixed for the trial of the case.

Paragraph (B) of Section 18 of Act 85 of 1926 provides that when the allegations above referred to are contained in the complaint of the plaintiff and are denied by the defendant at the time fixed for the hearing, as they were in this case, if it be shown that such allegations are without reasonable cause or reasonable foundation in fact, the complaint shall be dismissed, and that this question shall be determined by the Court before proceeding with the hearing of the other issues involved.

The sole issue presented under the exception of prematurity, is therefore, as to whether or not it appears from the evidence that the allegation of plaintiff, that plaintiff had refused to pay him the maximum percentage to which he was entitled, was founded on a reasonable cause, or had a reasonable foundation in fact.

The language of the statute which refers to these essential allegations required in the complaint, says: "If it be shown that such allegations are without reasonable cause or reasonable foundation in fact," the complaint shall be dismissed. The burden of proof that there is no reasonable foundation for the required allegations rests upon the employer, as it could scarcely be expected that plaintiff would proffer evidence to destroy the averments which are indispensable to sustain his demand for recovery.

In passing on this question, we think it is proper to take into consideration where the statute places the burden of proof, and also the language used in reference to the alleged refusal of the employer to pay, which entails a dismissal of the complaint only when it is shown that it does not rest on a reasonable cause, or reasonable foundation in fact.

Even if we be in error as to which of the parties litigant carries the burden of proof, the verbiage of the statute above referred to indicates quite clearly that an exception of prematurity is one of these technical defenses not favored in compensation suits, and which have been practically brushed aside by the liberal construction given by our Courts to compensation statutes, and always in favor of the employee.

The proof shows that plaintiff was paid eleven 37/100 dollars ($11.37) weekly, during a period of almost twelve (12) months by the Southern Casualty Company in which defendant lumber company carried insurance policies for its employees. It is claimed by defendant company that plaintiff appeared satisfied with these payments he was receiving, never complained during that period of time, did not ask for a larger amount until demand for his maximum weekly average was made by his attorney, which was too late to permit an investigation by defendant for this increased allowance thus demanded by the attorney, and that, as a matter of fact, defendant never refused to pay the maximum amount urged in plaintiff's complaint.

On March 29, 1928, attorney for plaintiff addressed a letter to the Forest Lumber Company, defendant, saying that plaintiff had been receiving eleven 37/100 dollars ($11.37) during the period hereinabove stated, and claiming the difference between that amount and twenty dollars ($20.00) per week, the maximum allowed by law, from April 11, 1927, and for the continuing of payments on the twenty-dollar ($20.00) basis during four hundred (400) weeks.

The Southern Casualty answered this letter the day following, stating that plaintiff had been receiving eleven 37/100 dollars ($11.37) per week, which was the full com-

pensation to which he was entitled, but saying, if the attorney for plaintiff arrived at a different computation, the insurance company would be willing to take up the matter further.

In reply to this letter, plaintiff's attorney, on April 3, 1928, stated to the insurance company that plaintiff's earning with the Forest Lumber Company, defendant, was forty-three 40/100 dollars ($43.40) per week, and which therefore entitled him to the maximum weekly compensation of twenty dollars ($20.00).

On April 4, 1928, the insurance company answered this last letter by saying that according to its record, plaintiff was doing watchman's duties for which he was receiving two 50/100 dollars ($2.50) per day, and that he was being paid compensation based in accordance therewith, and concluded by asking that plaintiff make affidavit showing the days and nights he had worked, etc., and that upon receipt of that information, "we can go into the matter further." The concluding part of these two letters shows that the insurance company desired more time to consider the demand of the plaintiff.

It will be observed that the first letter by plaintiff's attorney was written to the defendant company, and on the next day, the reply came to him from the insurance company, which shows that communication between the two companies was immediate, and that the insurance company had practically taken charge of matters connected with plaintiff's claim. It seems, therefore, that the insurance company could have, without any delay, obtained the required information from the defendant company to answer as to whether it would or would not pay the increased amount asked. The further delay asked for in the two letters before mentioned,

was not justified under the circumstances as we read the record. The position of defendant on this feature of the case, in which it claims it should have had further delay, is based on the fact, as claimed by it, that its sawmill at Oakdale had been closed for some time, that all its records, pay rolls, etc., had been destroyed because of no further need for them, and that its employees at the sawmill had since been dispersed in various places, creating a condition of affairs which demanded further time for investigation so that it might be in a position to find out, if, in reality, the maximum claim of plaintiff was well founded. The result of an investigation under a condition of affairs thus depicted, would in all probabilities have proved fruitless or so lengthy, that a delay beyond all reasonable measures would have been required before it would have been possible to ascertain whether or not defendant would refuse to comply with the demand of the plaintiff who could not be expected to patiently await the result of such an investigation.

R. C. Bolton, the record shows, is the adjuster of the insurance company which has its home office at Alexandria, La. Plaintiff was asked as a witness, if he had said to Bolton whether he was entitled to more money. He said Bolton asked him if he worked day and night when he was injured; he answered that he was on duty twenty-four (24) hours' time when he was injured, and that he asked Bolton if he was not supposed to get more money, and that Bolton said he would see about it. This conversation, plaintiff testifies, took place three or four months before, in the office of the insurance company at Alexandria. This evidence of plaintiff shows that Bolton knew plaintiff was claiming a greater amount than he was receiving from the insurance company of which Bol-

ton was an officer, and it further shows that Bolton promised to look further into the matter. As such were the official relations between the officers of the company on the subject in question, Bolton should have inquired into the merits of plaintiff's claim for a greater amount, as he had impliedly promised to do, unless we accept the probability of a deriliction of duty on his part as an excuse for the failure of his company to begin an investigation for the additional claim of the plaintiff, which was presented more than three months prior to the institution of this suit. It is true that Bolton denies that plaintiff ever mentioned to him that he was also employed as night watchman and was entitled to more money. Evidently the District Judge believed plaintiff, and from the facts of the case, we find nothing in the record that would justify us in disbelieving him.

Counsel for defendant says that defendant never refused to pay the additional amount claimed. He says, "to refuse means to decline to do, permit, deny, to refuse to consent." Standard Dictionary. The defendant did not refuse expressly or in so many words, either spoken or written, but the statute invoked by it nowhere requires an express refusal. As it is shown that the insurance company failed to see about the additional claim during a period of more than three months before the suit was filed, and after being asked for payments in two letters written before the institution of proceedings, it must be concluded that defendant by implication, declined to pay, or refused its consent to comply with the demand. This implied refusal meets the requirements of the statute and is sufficient.

Plaintiff testifies that during the day he fired the skidder, and was watchman on it at nighttime. His wages for this double work, he says, were three dollars and seventy-five cents ($3.75) for firing the skidder, and two dollars and fifty cents ($2.50) to watch it, totaling a daily wage in twenty-four (24) hours of six dollars and twenty-five cents ($6.25) per day.

Counsel for defendant seems to contend that it was a physical impossibility for plaintiff to be on duty day and night, during twenty-four (24) hours. The proof shows that in the day time, plaintiff fired the skidder, and at night had his bed on the skidder where he slept. The proof shows that the work around the skidder at night was extremely light, the fact being that he was required there as a watchman, principally.

T. M. Cooper, a witness for defendant, testified that plaintiff could do the work in the day time and also at night.

It is therefore shown that plaintiff was getting a weekly wage of forty-three 75/100 dollars ($43.75) contended for by him.

Counsel for defendant further contends that plaintiff, when hurt, was doing the service of night watchman at two 50/100 dollars ($2.50) per day, and that he must get compensation based on that account. In support of this contention he refers to subsection 3 of Section 8 of Act 85 of 1926, wherein he quotes the definition of wages to be as follows:

"The total rate of pay at which service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury."

The proof is that for several years before the accident plaintiff had been employed as night watchman at two 50/100 dollars per night, and that prior to the injury, some few months before, he had been engaged in the additional service of firing the engine during the hours of the

day. The two services, counsel says, being distinct and separate, and the plaintiff having been hurt at night, his contract for hire for the day was not then in force, and cannot serve as a basis for the total wages claimed.

Under the portion of the statute quoted by defendant, it says in ·the concluding part:

"The injured employee is recompensed under the contract of hiring in force at the time of the injury."

Here, dual service was required of the plaintiff, but there was one contract of hiring which was in force at the time of the injury, as far as is disclosed by the record. Plaintiff had a contract with defendant to fire during the day, and to watch the skidder at night for which he received six dollars and ·twenty-five cents for every twenty-four hours of service rendered by him in this dual capacity, totaling a weekly wage of forty-three dollars and seventy-five cents, which we find to be the proper basis for his maximum compensation.

It is also contended that plaintiff did not suffer a total permanent disability. The proof is that he was hurt in the neck and spine; that he is a small farmer owning about twenty-two acres of land; that he cannot plow, cannot hoe without pain and suffering, and cannot ride horseback. It is shown that time only may relieve him of his physical disabilities, if ever he is relieved. It is needless to go with particularity over this part of the record, showing the severe injuries which plaintiff has suffered as the result of his accident. Suffice it to say that it appears clearly that he cannot do work of any reasonable character, and is laboring under a total permanent disability, which supports the judgment rendered against defendant referred to in the beginning of the opinion, and which correctly recognizes payments by defendant to the time decreed in the judgment on account of failure on the part of defendant to show the true facts, if plaintiff's allegations of payment were incorrect.

---

ON APPLICATION FOR REHEARING.

MOUTON, J. Defendant company, in its application for a rehearing, complains of errors on our part on all the issues originally presented, with the exception of our finding on the question of total disability plaintiff claims to have resulted from the injury which' he suffered. The largest portion of the brief filed in support of the application, however, deals with the exception of prematurity.

The defendant company contends now, as it did originally, that it should have been given more time for investigation as to whether it would allow or refuse the increase of, compensation asked for by plaintiff. Our opinion deals fully with the facts bearing on that question in which we reached the conclusion that the investigation would, in all probabilities, have been prolonged beyond a reasonable time, and that plaintiff could not be forced to patiently wait for the result of such an investigation to ascertain whether defendant would grant or refuse to comply with his demand. We will not repeat here what we said on this subject in our original opinion, which fully meets the contention urged in the application on this point.

Counsel also refers us to what we said of the conversation that took place between Bolton, adjuster of the insurance company, and plaintiff. In that conference, plain-

tiff says he asked Bolton if he was not expected to get more money, and that Bolton answered he would see about it. This conversation, in which Bolton promised to look into the matter, it must be noted, took place in the office of the insurance company in Alexandria. Counsel for defendant, in the application, refers to Bolton as a mere adjuster for the company. Counsel forgets, however, to notice the testimony of J. M. Alexander, president of the company, who said that if such a demand had been made on Bolton, and he had failed to tell him (J. M. Alexander) about it, he would have been derilict in his duties. It is therefore impossible to escape the conclusion that Bolton occupied a position in the company, by virtue of which he was required to see the president in reference to demands of that character. The president, in referring to Bolton and other officers, said also that they were in constant communication with him about such matters.

This matter was mentioned to Bolton by plaintiff three or four months before the suit was brought, and we cannot believe that Bolton was so derilict in his duties, that he never reported what had occurred, to his associates. Even if he did not, as the president admits that it was his duty to mention the matter to him, plaintiff cannot be charged with failure to notify the company that he was claiming the increase in question. This demand so made, and the letters which preceded the filing of the suit, gave the company all the time it could legally ask to determine whether it would refuse the increase. Its action was equivalent to an implied refusal to comply with plaintiff's demand, as we said originally. This conclusion, we find, is supported by the terms of the compensation statute on the subject of what constitutes a refusal, and

whether this plea of prematurity be considered as technical or not.

Counsel renews his contention to the effect that it was physically impossible for plaintiff to fulfill the double duty of fireman during the day, and of watchman of the skidder at night. Evidently, he forgets that T. M. Cooper, his own witness, testified that plaintiff could have attended to this dual service, to which we made reference in our opinion, and also to the fact that the work around the skidder, at night, was necessarily extremely light, and that plaintiff could easily attend to the services in the two capacities.

The proof shows that plaintiff was hurt at night while rendering services as night watchman of the skidder. Counsel refers us to several citations, but principally to Wilson vs. La. Central Lbr. Co., 3 La. App. 425, in which the Court passed on the wages that the employee was entitled to receive. These wages, counsel contends, the Court held to be for the particular service for which the employee was employed at the time he was injured. Counsel quotes the definition of wages from paragraph 3 of Section 8 of the compensation act as follows:

"The daily rate of pay at which services rendered by the injured employee are recompensed under the contract of hiring in force at the time of the injury."

The proof shows that plaintiff was paid three 75/100 dollars to fire the skidder in the day time, and two 50/100 dollars to watch it at night. The statute according to the foregoing excerpt says that the daily rate of pay for the services of the employee: "Are recompensed under the contract of hiring in force at the time of the injury."

The contract of hiring in force at the time of the injury in the instant case required plaintiff to render services in the two-fold capacity of fireman on the skidder and of watchman at night. He was rendering dual services, but under a contract of "hiring" in force at the time of the "injury." This brings this case under the very terms of the statute upon which counsel for applicant is asking for an adverse ruling. According to the contention of counsel, it would seem that if these services had been separated by the noon hour, instead of by the nighttime, and plaintiff had been injured in the morning while firing the skidder, he would have been restricted to that time as the basis for his compensation, and would have been precluded or debarred from any relief for wages of service rendered during the afternoon.

We do not think, that in framing the compensation statute, the Legislature was prompted by any such legal refinements, or that we should apply the doctrine for which counsel is contending, particularly as our Courts have uniformly given a liberal construction to such statutes, and invariably in favor of the employee.

The case in the 3rd La. Appeals, cited by counsel does not pass on the question at issue herein. In that case it was shown that the employee received a wage of three 30/100 dollars per day when he was engaged in hauling timber, and two 75/100 dollars per day, when swamping. It appeared that he had been shifted from one job to the other, and was injured while swamping. His "hiring" at that time, was exclusively for swamping, and the Court fixed his compensation accordingly.

In this case there was no shifting from fireman to watchman, the hiring in force at the time of the injury, was for services in two capacities as hereinabove stated, which entitles plaintiff to the increase of compensation as we originally held.

Finally, counsel for defendant contends that defendant should have been credited with the payment of eleven 37/100 dollars per week to June 11th, when the case was tried, instead of April 2nd, allowed by the District Judge, which was up to the filing of the petition.

Plaintiff in his testimony admitted that he was being paid at the time of the trial, twenty-two 74/100 dollars every two weeks, being the eleven 37/100 dollars weekly payments. Credit for these payments were allowed to April 2, 1928, the date the suit was filed, which should however, have been recognized to the 11th of June, when the case was tried. This entitled defendant to payments for nine additional weeks, amounting, at eleven 37/100 dollars per week, to one hundred and two 33/100 dollars, which added to the credit allowed below of five hundred and sixty-eight 50/100 dollars, foots up a total in credits of six hundred and seventy 83/100 dollars instead of five hundred and sixty-eight 50/100 dollars decreed by the District Judge. This correction can be made without the necessity of granting a rehearing.

It is therefore ordered and decreed that the judgment be amended by increasing the credit allowed from five hundred and sixty-eight 50/100 dollars to the sum of six hundred and seventy 83/100 dollars, and as thus amended, the judgment be affirmed, appellee to pay the costs of this appeal; and it is further ordered and decreed that the rehearing applied for be in all other respects hereby denied and refused.