No. 966

First Circuit

ARMSTRONG v. LAMAR LBR. CO., INC., ET AL.

(May 3, 1932. Opinion and Decree.)

Samuel J. Tennant, Jr., of New Orleans, attorney for plaintiff, appellee.

Ott & Johnson, of Franklinton, attorneys for defendants, appellants.

ELLIOTT, J. Van Armstrong while performing service as tong hooker for Lamar Lumber Company, Inc., arising out of and incidental to his employment in the course of his employer's business, received an accidental injury resulting in the loss of his right leg.

The accident occurred on March 9, 1931.

He claims compensation of Lamar Lumber Company, Inc., and that T. H. Mastin & Co., attorneys in fact for the Consolidated Underwriters' Exchange, and Consolidated Underwriters' Exchange are also liable unto him for the same. His claim as presented in his original and amended and supplemental petition calls for 65 per cent of a daily wage of $2.46 for six days a week, making $14.76 per week, 65 per cent of which is $9.59, and same for 175 weeks makes $1,671.25. He prays that this sum be ordered paid to him in a lump sum, less a credit of $40, with legal interest from judicial demand.

Lamar Lumber Company, Inc., T. H. Mastin & Co., and Consolidated Underwriters' Exchange answering his petition admit his employment and injury as alleged and that he is entitled to compensation, but they deny that he is entitled to the amount he claims.

They aver that the compensation to which he is entitled is 65 per cent of a daily wage of $2.05 and that same should be computed on a schedule of three days a week, the weekly amount of which is $6.15, and 65 per cent of same makes $4 per week for 175 weeks. That Lamar Lumber Company, Inc., is entitled to credit

of $97.43. They refuse to agree to a lump-sum settlement.

There was judgment in favor of plaintiff and against defendants in solido fixing plaintiff's compensation at 65 per cent of $12.30 per week for a period of 175 weeks, less a credit of $83.83. Defendants have appealed.

There is no dispute about the facts; the dispute is whether plaintiff's daily wage is to be computed on a twelve-hour or ten-hour day and on a schedule of three or six working days a week.

The evidence shows that plaintiff's pay was 20½ cents per hour. The first week he was employed he worked ten hours a day and six days a week; the next week he worked but four days and the next two weeks, three days each week, ten hours a day. The plaintiff was injured on the first day of the next week, and the evidence is that the crew of which he was a member worked three days of that week and ten hours a day, and if plaintiff had not been hurt he would no doubt have worked the same.

But the day preceding his injury, as well as on the day he was injured, he was credited with twelve hours' time.

The evidence shows that on these two days he was instructed by his foreman to go out earlier than his regular work commenced and help the firemen, and for doing so he was allowed two hours' extra time.

For this extra time, plaintiff was allowed wages at the same rate as for his regular time. His daily wage as tong hooker amounted to $2.05, but for these two days on which he was allowed twelve hours, his wages amounted to $2.46. Having been credited with twelve hours the day preceding and for the day he was in-

jured, plaintiff claims that his compensation should be fixed on a twelve-hour a day basis and on a schedule of six days a week.

Defendants resist and claim that as his regular time was but ten hours a day and as he had worked for the last two weeks only three days a week and would have worked but three days the week he was injured, his compensation should be based on a day of ten hours and a schedule of three days a week.

In this connection we are cited to the case of Clark v. Forest Lumber Company, 9 La. App. 639, 120 So. 88. In that case Clark was shown to have been regularly employed as fireman on a skidder during the day and as watchman on it at night. He slept in a room on the skidder. He was paid a regular sum of $3.75 as fireman and $2.50 as watchman, making $6.25, which amount he received each day of the week, a total of $43.75 per week. But Clark's work during the day and at night was his regular contract. He was able to perform both services and he was hired and paid accordingly. There was a dispute about the amount of his compensation because he was injured while performing the service of a watchman and for which he was receiving only $2.50 per night. But the court acting on the case held that his compensation was to be fixed on the amount he was paid pursuant to his employment for each day and each week, the weekly amount earned being $43.75.

In this case Armstrong was not regularly employed to help the fireman. The Clark case is therefore different.

The case Wilson v. La. Central Lumber Co., 3 La. App. 425, is also cited. In that case Wilson was injured while hired and working as swamper, for which he was receiving $2.75 per day. He had been previously hired and had worked as a log hauler for which he had received $3.30 per day. The court in fixing his compensation held that it should be based on the amount he was receiving for the work he was hired to perform and performing at the time of his injury, which was that of swamper, and declined to fix his compensation on the basis of what he had previously received at the time he was hired and was working for as a log hauler. The Wilson case is therefore different from the one presently in hand.

In Danzy v. Crowell & Spencer Lumber Co., Ltd., 16 La. App. 300, 134 So. 267, the parties were working only three days a week, but the plaintiff Danzy was not employed by the hour nor by the day and was not paid in that way; he was cutting logs and paid according to the number of feet cut; and the court estimated his daily and weekly earnings.

In Colquette v. La. Central Lumber Co., 11 La. App. 140, 119 So. 714, the plaintiff was employed and worked regularly seven days a week and his compensation was based on his regular daily and weekly wages.

In the case 9 La. App. 639, 120 So. 88, the party had worked seven days during the week.

In the case Boyett v. Urania Lumber Co., 8 La. App. 132, the work was cutting logs and payment was according to the number of feet cut.

In the present case Armstrong had helped the fireman during the early morning of the preceding day and had done so during the early morning of the day he was injured, but that was not part of his regular employment. He was injured during his regular employment and while working as tong hooker. As tong hooker his work was ten hours a day, and we

therefore think his daily wages upon which his compensation is to be fixed should be ten hours a day at 20½ cents per hour, or $2.05 per day, and as was held in the lower court.

We now come to the weekly schedule and to the difference of the parties on that subject. Mr. J. H. Grimmett, manager of the Lamar Lumber Company, Inc., was the only witness on this subject and his testimony is not questioned.

He testified that the pay roll showed that in the week of February 11, 1931, plaintiff worked six days a week; the next week four days and ten hours a day; the next week three days and ten hours a day; the next three days and ten hours a day.

That plaintiff was injured on the first day of the next week. That the skidder ran that week three days and ten hours a day and continued three days a week until it closed down in June.

"Q. Then will you state clearly so that there won't be any doubt about it the schedule under which it ran and under which you ran and under which this plaintiff worked and the number of hours per day and the number of days per week, under his contract to hire at the time of the injury?
"A. We were running three days per week, ten hours per day, the operations were working on that basis."

In another place:

"Q. It was possible for him to work the whole six days a week if he could get the employment?
"A. Yes, sir."

In another place:

"Q. If I understood you it was the demand at the mill that governed the operations of the skidder?
"A. Yes.
"Q. As a matter of fact, after there was no demand there, you cut the operations at the skidder as you did in June?
"A. Yes.

"Q. And if there was a great demand there you ran your skidder full time?
"A. Yes, if we ran the mill."

Plaintiff was a member of the skidder crew, and we understand from Mr. Grimmett that the number of days during the week that he worked, depended on the demand for logs at the mill. If the demand so required, the skidder worked six days in the week. If three days a week was sufficient to log the mill, then the logging crew worked the number of days in the week necessary to keep the mill in logs and no longer. Our understanding is that the logging crew were recognized by the defendant lumber company as its employees. They could quit any day, but as long as they chose to remain in its service they were given work as logs were needed. They could be called to work six days of the week or four days or three days, as the exigencies of the mill required.

The Employers' Liability Act, sec. 8 (amended Act No. 242 of 1928), fixes compensation on a weekly basis and the week which it has in mind is a full week, containing seven days, of which six are days of work and one a day of rest.

The same section (sec. 8, subsection 3, of the amended act) provides, however, that: "The term 'wages' as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury."

We understand this to mean that compensation is to be fixed according to the daily rate of pay, but the length of time it runs is by the week and the aggregate of his daily wages during a week is the basis for determining the amount he is to receive per week. If there is an agreement in the contract of hiring fixing the number

of days in the week that the workman engages to work, or if he works by the piece, lot, or job, then the week earnings are to be estimated as seems fair and equitable. But in a case like the present where the service which the party was performing at the time of his· injury was under the same hiring which was enforced and governed the agreement at the time the party was first employed, and which contemplated we think by reasonable inference from the testimony of Mr. Grimmett, the operation of the skidder for six days a week, in such a situation we think the compensation of the party injured should be based on a weekly schedule of six days per week.

The cases of Gousoulin v. Lake Charles Stevedores, 19 La. App. 96, 139 So. 747, and Williams v. Lake Charles Stevedores, 19 La. App. 185, 139 So. 748, recently decided, are based on a different situation in the matter of hiring. In those cases, the stevedores Gousoulin and Williams were hired by the hour and could be called on and had to hold themselves ready under their contract to work at the docks for such number of hours and only on such days as their services were needed. That was their contract. Their hours as well as days of work were uncertain. If they had not remained subject to such service in the employment in which they were engaged, they would· have forfeited their employment. They could not engage in any other work because the nature of their work required them to be constantly in readiness to respond to a summons to come to the dock. To that extent the situation was the same with the plaintiff Armstrong. When the defendant Lamar Lumber Company needed logs, the skidder work had to start and keep working until enough logs necessary to keep· the mill going for a week had been supplied. Armstrong had to hold himself in the employment of the defendant, ready when noti-

fied to work six days any week that such operation of the skidder would require to keep the mill going for a week. He would have forfeited his employment if he had not done so. The difference between him, and the plaintiffs in the two suits mentioned, was that the stevedores were hired to work by the hour and to remain at it as many hours as the work of loading or unloading of the ship required, but Armstrong was hired by the day, and we conclude from the testimony of Mr. Grimmett that the operation of the mill at the time of the hiring was giving employment to the skidder crew six days a week, and nothing indicates that at the time of the employment in question, the parties contemplated a less number of days work than six during the week.

Such being the facts of the case, we think the reason and intent of the statute is put into effect by fixing plaintiff's weekly compensation on a schedule of six days a week for the one hundred and seventy-five weeks during which the statute provides he must be paid on account of his injury. This holding places the. present case in line with our recent decision in ·the case of Boudreaux v. Rossen, 19 La. App. 188, 139 So. 706, in which the facts as to the hiring and the number of days worked during the week, during the subsequent weeks of the hiring, was similar to what took place in the present case, and requires, we think, a similar decision.

As for the credits to which the defendant is entitled we think the amount was properly fixed by the court at $83.83.

The appellee has filed an answer to the appeal praying that his compensation be increased. We have considered his application. The increase prayed for is refused.

For these reasons. the judgment appealed from is affirmed. Defendant and appellant to pay the costs in both courts.