### CLARK v. FOREST LUMBER CO., Inc.

#### No. 1009.

Court of Appeal of Louisiana. First Circuit.

June 8, 1932.

Thornton, Gist & Richey, of Alexandria, for appellant.

Williams & Blackshear, of Oakdale, for appellee.

### ELLIOTT, J.

Forest Lumber Company, Inc., proceeded by rule against Jesse Clark to show cause why the judgment rendered against it herein, on July 20, 1928, condemning it to pay said Clark compensation at the rate of $20 per week, and which, on appeal to this court, was fixed at 400 weeks, subject to certain credits, fixed in the decree, should not be decreed to be satisfied, and plaintiff in rule relieved from making further payment on said account, and in the alternative, if not fully released, why said payments should not be diminished in time and amount.

The claim for relief is based on Act No. 20 of 1914, § 20 (amended Act No. 85 of 1926).

The former appeal is reported in 9 La. App. 639, 120 So. 88.

Mover avers, among other grounds for its rule, that said judgment was obtained through error. Further avers, in case it is held that error did not exist, etc., that it then and in that event be held that said Clark has recovered, and is now able to perform reasonable manual labor, and that mover be discharged on that account, and, if not fully recovered, it is then prayed that it be decreed that he is able to perform some labor, and that its payments be reduced in amount, and that the term be shortened, as the facts may justify. Mover avers that said Clark, through deliberate acts, conduct, and misrepresentation, has been paid compensation when he was not entitled to same, to the extent of $2,000.

The petition for rule contains a number of other averments, but we do not deem a further statement necessary for the purpose of the present appeal. Jesse Clark, responding, denied that he had made misrepresentation in any matter, and alleged that he has never recovered from the injury received on April 11, 1927, and on account of which he had recovered the judgment in question. He de-

nies that plaintiff in rule. is entitled to the relief prayed for, and prays that its demand be refused and rejected.

The answer contains a number of other averments, but a further statement concerning same does not appear necessary for the purpose of acting on the present appeal. The lower court, acting on the evidence, rendered judgment in favor of Clark, refusing and rejecting Forest Lumber Company's demand. Forest Lumber Company has appealed.

Jesse Clark, defendant in rule, recovered judgment against Forest Lumber Co., Inc., for permanent total disability under section 8 (amended Act No. 85 of 1926), subsection 1 (b) of the Employers' Liability Act of this state, on account of injury sustained on April 11, 1927. The section reads as follows: "For injury producing permanent total disability to do work of any reasonable character, sixty-five per cent. of wages during the period of disability, not, however, beyond four hundred weeks."

The opinion of this court on the former appeal and the record of the suit shows that Clark, at the time of his injury, was engaged in work during the day as a fireman on a skidder, and served as watchman on it at night, and received wages as fireman and watchman.

In the opinion of this court, in acting on the appeal, he is spoken of as a small farmer, and the record of this suit shows that, after his injury, he returned to his farm, and is now living thereon. The plaintiff in rule contends that he is engaged in farming and that the crops he is making show that he has recovered, and has no right to any further compensation.

On the trial of the rule Clark stated that he was 58 years old, owns 40 acres of land, of which 13 or 14 are in cultivation, and about 20 under fence; that during the year 1931 there was made on his farm about 30 barrels of corn, 25 bushels of potatoes, and one small bale of cotton; he says that his son made the crop, but that he worked a little now and then during the year helping to plant and cultivate it, as he could; that due to his injury he is physically unable to work. Clark claims that the enduring injury received, and on account of which he is still disabled, exists in his neck and back, and complains of his head.

An expert roentgenarian called by the plaintiff in rule, and who it may be assumed is in its employ, examined Clark, and made a picture of his neck and back for the purpose of the present trial. This physician testified at length on the subject and produced X-ray plates and pictures of the area in which disability and pain is said to exist.

He was asked on the trial of the rule:

"Q. In your examination did you make an effort to find out if he had an injury to his cranium or neck vertebrae or the lower vertebral as shown on the picture? A. My sole effort was in the attempt to find an injury to the cervical vertebrae or the base of the skull, also the dorsal vertebrae.

"Q. After an extensive search and study by X-ray did you find any injury to the vertebrae or the cranium? A. I was unable to find any injury."

Another eminent local physician, likely in the employ of the plaintiff in rule, examined Clark clinically, and gave testimony at length. He found a stiff neck, but nothing further.

We quote a few of the questions asked him and his answers thereto:

"Q. Doctor, Mr. Clark, as I understand. complains of stiffness in his neck, did you make any examination or observation in regard thereto? A. I did. The symptoms on his neck were purely subjective. There was nothing objective on his neck, with the exception of the already mentioned infected follicular area. There was no apparent injury to any of the muscles of the neck. The stiffness was bilateral; which is rather unusual in traumatic conditions where the vertebræ are eliminated, the majority of these cases being more or less unilateral in frequency and seriousness. There was no indication of any atrophic condition of any of the muscles. either bilateral or unilateral."

He was later asked:

"Q. Did it appear that he might have had his recovery very recently, or a few months past, or a few weeks past? A. I will answer that in a more or less categorical way, in saying that Mr. Clark's neck will probably be stiff until this litigation is concluded. * * *"

The two physicians called by plaintiff in rule gave it as their opinion that Mr. Clark has recovered from his injury and is able to resume labor. The condition of his neck is not, in their opinion, calculated to deter him in the performance of manual labor.

As against this testimony, defendant in rule called four physicians, their vocation being the ordinary practice of medicine, but two of them used X-rays in their practice. They did not claim to be experts in reading X-ray pictures, but professed to have sufficient knowledge to do ordinary reading. They had all examined Clark, and one of them had made X-ray pictures of his neck and the base of his skull, and gave his interpretation of same.

Another one in giving his testimony interpreted, according to his understanding, some of the pictures that had been produced by the

expert radiologist who had been called by the plaintiff in rule. The other two physicians had examined Clark clinically. The four physicians called by Clark agreed that there is something the matter with his neck. They say that it is not only stiff, but that the vertebræ are in such condition that it causes him pain, and are firm and positive in their opinion that Clark has not recovered from his injury; that he is still incapable of doing manual labor on that account; that there is some light work that he can do, but it is not inferable from what they say that he can labor consecutively, except for short periods, say one, two or three hours at a time, at light work.

The plaintiff in rule, in addition to the physicians mentioned, called four other witnesses. Three of them testified positively that they, acting in the interest of plaintiff in rule, had gone to Clark's farm where he lived and saw him at work. It appears that two of them went together and were there at the same time, but another was there at a different time. They all say that they found Clark at work in a field, using a corn planter and planting corn. This corn planter was pulled by a fast-walking horse, and there were stumps in the field. Stumps, when in the row, made it necessary for Clark to lift the corn planter around or over them, which required strength as well as steadiness on his feet. They say they particularly observed the movements of his head and neck, and as to whether or not he could turn it, and that he used his neck just as other men, and they could see nothing at all wrong with his neck. They only went one time, and only observed him for a period of time which they estimated at about 15 or 20 or 30 minutes.

The other witness met Clark in the road driving a horse team which pulled a wagon loaded with wood. He says that Clark was driving all right and could use his neck without trouble. Plaintiff in rule points out that to load and unload this wood required considerable physical strength, but Clark in testifying was asked about this, and he says that the wood was loaded on the wagon by his son, and that when he got to Oakdale it was unloaded by his son-in-law.

On the part of Clark, four or five neighbors appeared as witnesses, all of them evidently his friends, one of them his son-in-law, and they all testify, and Clark himself testified, that he now and then plowed an hour or so at a time, but that was the most he could do. Mr. Clark testified that, acting on the advice of a physician, he tried to work, but says that he was unable to work longer than an hour or so at the time, and that on each occasion the exertion injured and pained him so that he was laid up for a week. His wife and daughter gave testimony supporting his claim to inability to work.

Now it is generally known by everybody that a farmer on a small farm of the area of that owned by Clark, who does his own work, must work all day. He must be able to walk, stand, lift, and do sustained labor in various positions, and often of a kind that requires the strength of a man. The fireman of a skidder and a watchman would be unable to perform work of that nature, unless he was able to do sustained work for a day at a time. He could not do such work if he is in the physical condition which he and his witnesses say he is in.

It therefore follows that what the witnesses called by plaintiff in rule testified to may be true, and the witnesses called by Mr. Clark and Clark himself, may have also testified with equal truth, and, if so, then Clark can be totally disabled to perform reasonable manual labor of such duration and extent that he is unable to make a living as a farmer, or at any other kind of work that requires manual labor, and there is no claim nor pretense that any other method of earning a livelihood is open to him.

In connection with the difference in the finding of facts and opinion which exist between the physicians called by the opposing parties concerning Clark's condition and the statements of the other witnesses called by the parties to testify in the case, the personal observations of the judge a quo must be taken into account. He says in his opinion:

"At the request of counsel I examined plaintiff's hands which didn't indicate that he had been doing hard work of late, because the skin in his hands is soft, although the skin is very thick, and I got the impression that he once did hard manual labor, but owing to the softness and the absence of corns or hard places in his hands I do not think he has done any hard labor of late.

"The muscles of his arms are comparatively soft for a man and indicate to me that he has not done much work.

"When examined in court plaintiff exhibited signs of considerable pain when his head and neck were manipulated. While I think he exaggerates, both as to degree of pain and as to degree with which he can move his head, I feel certain the plaintiff does suffer a very considerable amount of pain when his head and neck are moved and I feel certain that he cannot move his head very much without some degree of pain. He can move his head sidewise slightly without discomfort for I saw him doing it in court.

"This résumé of the testimony made without reading the record shows that the great weight of the testimony is with the plaintiff and that he is at this time unable to do any manual labor of any consequence."

This finding and observation on the part of the judge of the lower court must have

some weight, when he saw the party that had been injured and perhaps knew the witnesses.

■ We do not think the fact that Clark is able, willing, and tries to do some work on his farm toward helping make a livelihood for himself and family, operates to show a recovery, such as is contemplated by section 20 of the Employers' Liability Act, as amended, and to take him out of the situation in which he was recognized to be, by the judgment in question.

From a work entitled Workman's Compensation Law by Schneider, vol. 2, § 400, p. 1006, we excerpt as follows: "Disability or incapacity for work in the sense in which it is used in the compensation Act, means inability to earn wages or full wages, as the case may be, at the work in which the injured workman was employed at the time of the accident, or inability to perform such work as may be obtainable or inability to reach his place of work on account of his injuries, or inability to secure work to do."

Same work, section 416, p. 1066:

"Permanent total disability is that condition which is deemed to incapacitate an employee from all work for all time, either actually or by direct statutory provisions.

"An employee may be said to be totally incapacitated when he is disqualified from pursuing the usual tasks of a workman in such a way as to enable him to procure and retain employment. The fact that he is not absolutely disabled for the performance of any kind of manual labor is not a prerequisite to a finding of a total incapacity. The fact that an employee has an income from business at which he performs no labor is immaterial. It may consist of inability to secure employment because of the injury, although the employee would be able to do work if he could secure it."

Section 403, p. 1012:

"Termination of disability, temporary employment at a different occupation for a few days at higher wages than the employee received prior to his injury is not conclusive evidence that his disability has ceased. * * * If the workman is less able to compete in the labor market or his earning capacity might be less in the future than it was before the accident, as a result of the accident, he is entitled to compensation regardless of the fact that at the time of the hearing he may again be doing his customary work at the same or better wages.

"Incapacity can not be presumed from the mere inability to obtain work. Compensation is payable for inability to do work or obtain work because of the physical condition of the workmen, due to the accident. Probable future earning cannot be determined from an offer of work extended by the workman's employer pending litigation. Neither can any award for total incapacity be reduced because the employee has not attempted to obtain employment.

"An employee will not be deprived of his right to compensation by reason of his lack of will power to throw off a nervous condition which followed the accident."

McQueen v. Union Indemnity Co., 18 La. App. 612, was a case in which it was claimed that a party had recovered and was no longer a total disability. The evidence showed that the employee was a carpenter, and while at work on a high scaffold had fallen a distance of 104 feet. His injuries were of course of the severest kind. His employer, after paying him compensation for 300 weeks, had stopped payment, upon which the injured employee brought suit claiming compensation for an additional 100 weeks.

In acting on the case this court said: "We do not believe that the law ever contemplated that, if the injured employee recovered to the point where he became capable of performing any kind of work of a reasonable character, regardless of its nature, that he was to be deprived of further compensation which was otherwise due him. We are rather of the opinion that it meant that he should be able to perform work that is reasonably of the same kind or character of the one he was accustomed to perform and is capable of doing. It is hardly conceivable that it ever intended that an employee who was a skilled worker in any trade, earning an average weekly wage which entitled him to the maximum compensation of $20 per week, should be denied that compensation because forsooth there came a time during the period of compensation when he was able to earn $4 to $5 per week as a helper around a filling station."

In this case the fact that Clark occasionally does farm work, such as plowing for a couple of hours, but cannot work consecutively for even a half a day on account of his injury, and on account of which he suffers constant pain in his neck and back, but cannot and does not work every day, and at times not more than once a week, does not show that he is able to make his living at farming. Farm work ordinarily requires a full day's work, and more or less every day of the week.

It is claimed by plaintiff in rule that he can perform any kind of manual labor, but the claim is not supported by the preponderance of the evidence on the subject. The lower court evidently accepted as true the statements of Clark and of his neighbors and of the physicians called by him, and we cannot say from the record that he has erred.

It rather appears that he decided the case correctly.

Judgment affirmed. Forest Lumber Company, Inc., appellant, to pay the cost in both courts.