## OLINDE v. ARUNDEL CORPORATION et al.*

### No. 1239.

Court of Appeal of Louisiana.  First Circuit.

Dec. 4, 1933.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

LeDoux Provosty, of Alexandria, for appellee.

LE BLANC, Judge.

Plaintiff, J. B. Olinde, who was formerly employed by the defendant, the Arundel Corporation, received an injury to his right arm, during the course of his said employment on June 20, 1932. At that time, the Maryland Casualty Company carried compensation insurance on the employees of the Arundel Corporation.

On August 20, 1932, plaintiff and his employer and the Maryland Casualty Company presented a joint petition to the judge of the Eighteenth judicial district court sitting in and for the parish of Pointe Coupee, in which it was represented that the parties, having availed themselves of the provisions of section 17 of Act No. 20 of 1914, as amended, had agreed on a lump sum settlement of the amount of compensation due plaintiff by his employer, and accordingly they prayed that judgment be rendered approving the same, all as provided for under the statute.  It is shown by the allegations of the petition that at the time of his accident the plaintiff was earning a wage of $15 per week, 65 per cent. of which amounted to $9.75 and that he had been paid compensation at that rate for two weeks, making the sum of $19.50 which he had already received.  It is also further alleged that he was discharged as able to return to work, and did actually return on August 1, 1932, and that there being some disagreement between them as to the extent of the injury and the degree of disability, the parties have agreed on a settlement of $68.25, "representing seven weeks of compensation," $19.50 of which having already been paid leaves a balance due the employee of $48.75. The petition having been properly verified by the respective parties, the district judge signed, at Chambers, the necessary order and judgment approving the settlement and discharging the employer and its indemnitor from further liability, upon payment of the amount thereof.

As appears from the record, Olinde returned to work on August 2, 1932, and worked every day thereafter, except three days, until November 24, 1932, when he voluntarily quit his job.  During that period, instead of working as a drag-line operator, he ran a water pump.  That was lighter work, he says, but, nevertheless, he seems to have earned the same wages he did before.

On November 21, 1932, three days before he left his work with the Arundel Corporation, he had filed the present suit, the purpose of which is to set aside and have annulled the lump sum settlement as approved by judgment of court and to recover compensation for a period of 200 weeks as for the total loss of his right arm and in addition thereto the penalty provided by the statute when such settlement is made at a greater discount than 8 per cent.

The judgment approving the lump sum settlement is attacked on three grounds:  First, that it bears no date and was not signed in open court and after due reading, and is therefore not final;  second, that plaintiff was induced to sign the joint petition on

*Rehearing denied January 22, 1934.  Writ of certiorari denied February 26, 1934.

which it was obtained through fraudulent misrepresentations as to his real condition and to his rights under the compensation statute with which he was not acquainted; and, third, that the settlement was made at a greater discount than 8 per cent. in direct contravention of the provision of the statute.

The district judge was of the opinion, as we understand his reasons for judgment, that the employer and its indemnitor acted in good faith and were honest in their belief concerning the facts that were stated in the joint petition presented to the court for approval of the lump sum settlement, but held that the amount of wages which the employee received was inadvertently misstated therein and that the representatives of the employer and the casualty company who consummated the agreement should be legally held to have known what the true wage was. Inasmuch as the employee's wage, based on seven work days per week, as he found it to be was $17.50 instead of $15 as alleged in the joint petition, and settlement was made on the latter figure, the district judge set aside the judgment approving the lump sum settlement on the ground that it was illegal, and he then rendered judgment in favor of the plaintiff awarding compensation based on an 85 per cent. loss of use of the right hand with the penalty prayed for. The defendants have appealed and plaintiff answers the appeal asking that the judgment be amended by increasing it to the full amount as originally prayed for by him.

In his written reasons for judgment, the trial judge stated that in view of the conclusion he had reached that the judgment approving the settlement between the parties would have to be set aside on some other ground, it was unnecessary, for the purpose of his decision, to pass on the question as to whether such judgment had to be signed in open court or not. He does express the opinion, however, that it is not the intent of the statute that these judgments be signed in open court and that it is not necessary that the joint petition presented to the court for approval be supported by proof beyond the verification of the parties to the facts therein alleged. On this point we find ourselves in accord with the learned district judge. Section 17 of the Compensation Statute, as amended by Act No. 38 of 1918, which gives to the interested parties the right to settle all matters of compensation between themselves, simply requires that all agreements of settlement shall be reduced to writing and shall be drawn substantially in accord with the provisions of the statute, and that they "shall be approved by the Court." The agreement has to be presented upon a joint petition of the parties, duly verified by them, to the court, and, if approved by it, the settlement is then "immediately entered as the judgment of the Court" with the same force and effect as other judgments. All that the law requires is that the court give its judicial sanction to the agreement and nowhere in the act is it indicated that that should be done in open court and clothed with the same formalities as are prescribed for ordinary judgments by the Code of Practice under article 543. The moment this sanction is given by the court, the agreement at once assumes the force and effect of a judgment and may be enforced and satisfied as such.

We are also satisfied, as seems to have been the district judge, that all parties to the agreement acted in good faith and that plaintiff was not misled into signing the joint petition presented to the court by any fraudulent representations on the part of any one connected with either of the defendants. The testimony of all the witnesses who had anything to do with the preparation of the papers in connection with the settlement, and especially that of Mr. Walker, local agent of the Arundel Corporation who took plaintiff to the notary to have the petition verified, refute the contention that there was any fraud practiced and that Olinde was not fully aware of the full meaning of the agreement. The only remaining ground on which the settlement could not be upheld then is the one on which the district judge found that it should be set aside, and, to do so, he had to find that the wage that plaintiff earned was incorrectly stated in the petition and that his employer should legally be held to the knowledge of what the real wage was. This, then presents the important issue in the case.

In arriving at the conclusion he did, the trial judge holds that, while plaintiff himself signed a joint petition addressed to the court, in which it was alleged that the weekly wage was $15, he was in truth and in fact earning $17.50 per week and therefore a settlement based on the smaller wage was made at a greater discount than permitted by the statute and was unlawful. The proof shows that plaintiff was earning $2.50 per day. At that rate, working six days per week, the employee earned $15.00 per week, the amount stated in the joint petition signed by plaintiff. The district judge found, as a matter of fact, however, that plaintiff's employment was for seven days per week, and, consequently, the weekly wage was $17.50. To sustain his finding of fact on this point, the district judge took two days out of plaintiff's whole period of employment when he worked eight hours per day as a fireman and then, connecting these two days of employment with a statement of Mr. Walker, local agent for the Arundel Corporation to the effect that, as fireman, the wage was $22.50 per week of fifty-six hours, he works out the simple problem that a week of fifty-six hours at eight hours per day, necessarily means a seven-day work week. The testimony of Walker, however, indicates plainly that it

was at plaintiff's request that he was tried out as a fireman and that he worked only those two days as such and then returned to his regular work at the drag-line. It seems to be rather straining the point to use these two days of his employment and which was not plaintiff's regular job, to establish a seven-day work week in his favor. We have, on the other hand, analyzed the work sheet filed in evidence which covers plaintiff's whole period of employment and find that prior to the date of his accident, from January 10, 1932, to August 20, 1932, a period of more than seven months, he worked a total number of one hundred and four days. During that period also, there were twenty Sundays and the record shows that he worked on eleven of the twenty and did not work on the other nine. On such a record, it could hardly be said that plaintiff has shown that he was engaged to work seven days per week or that there was an agreement that he was so engaged.

In further support of his finding of a seven-day work week, the district judge refers to the fact that plaintiff was employed in levee construction work, and, he states, it is a matter of common knowledge that people engaged in that kind of work pursue it continuously without interruption except for breakdowns, bad weather, and high-water conditions. We doubt that that is a matter which courts can take judicial cognizance of, as many of the courts even of this state, we presume, are not at all familiar with that kind of work and the conditions under which it is carried on. But conceding it to be a matter of which we can take cognizance, it does not necessarily follow that each and every man employed by a levee contractor is engaged to work seven days per week. The usual working week is six days and it strikes us that, in the absence of a specific agreement, it is a matter which is optional with the employee whether he will work on Sundays or not.

In the case of Armstrong v. Lamar Lumber Co., 19 La. App. 816, 141 So. 805, 807, this court held that the Employers' Liability Act, in fixing compensation on a weekly basis, had in mind a full week of seven days "of which six are days of work and one a day of rest." In King v. American Tank & Equipment Corporation, 144 So. 289, and Russo v. Southern Kraft Corporation, 144 So. 764, 765, the Court of Appeal for the Second Circuit held that it was only in cases where he is "employed actually and specifically for seven days a week" that the employee is entitled to more than six days a week. If any presumption is to be indulged in, it would seem that it is in favor of a six-day work week and the employee claiming that he was engaged for seven days per week would therefore have the burden of showing a specific agreement to that effect. This, the plaintiff in this case has not shown

and we hold, contrary to the finding of the trial judge, that his weekly wage was correctly stated to be $15 in the joint petition which he presented to the court with his employer and its indemnitor.

On this last ground on which the lump sum settlement is attacked, we therefore find ourselves in disagreement with the learned district judge and this disagreement naturally leads us to a different conclusion, as, based on a weekly wage of $15, there was no discounting whatever and plaintiff is bound by the agreement.

For the foregoing reasons, it is now ordered that the judgment appealed from be and the same is hereby annulled, reversed, and set aside and it is further ordered that there be judgment in favor of the defendants, dismissing the plaintiff's suit. As plaintiff had obtained an order of court permitting him to bring this suit in forma pauperis, there are no costs to be taxed.