151 So.2d 636 (1963)
STATE of Florida ex rel. IOWA NATIONAL MUTUAL INSURANCE COMPANY, and Wilson Leonard's Hardware Store, Petitioners,
v.
The FLORIDA INDUSTRIAL COMMISSION, Joseph A. Scarlett, and Henry Hudson Parker, Respondents.
No. 31891.
Supreme Court of Florida.
April 3, 1963.
*637 Monroe E. McDonald of Sanders, McEwan, Schwarz & Mims, Orlando, for petitioners.
Edward H. Hurt, Orlando, for Henry Hudson Parker.
Burnis T. Coleman and Patrick H. Mears, Tallahassee, for Florida Industrial Commission.
THOMAS J. COLLINS, Circuit Judge.
This is a workmen's compensation case and the question, primarily, is the interpretation of the second sentence of section 440.20(10), Florida Statutes, F.S.A., as relates to a lump sum discharge, often referred to as a "wash out." It is before us on original prohibition at the suggestion of the employer, Wilson Leonard's Hardware Store, and the insurer, Iowa National Mutual Insurance Company.
The factual picture is this: Respondent workman, Henry Hudson Parker, is a married white male, and at the time of the injury was 58 years of age. He is a high school graduate, was the manager of a department store in Franklin, Louisiana, manager of a shoe store in Dallas, Texas, salesman for Studebaker in New Orleans, Louisiana, and at the time of the accident was employed as a salesman in an Orlando hardware store. While lifting a keg of nails in this last employment he felt a "pain in his back," which was later diagnosed as a herniated intervertebral disc in the lumbar area of the spine at L-4-5.
Insurer afforded to Parker all medical treatment requested by him and paid him compensation for temporary total disability from October 15, 1960, until February 24, 1961, when he had reached maximum benefits from medical treatment, absent surgery. The treating physician advised this course to diminish the remaining partial disability in the back but Parker refused to submit to surgery and, thereupon, the carrier refused to make further payments.
Parker was rated as having a 25% permanent partial disability of his body as a whole and had prior to February 24, 1961, received $30.00 weekly. Future medical expenses were anticipated.
*638 In the light of this impasse between Parker and the carrier and the desire of the former to move to New Orleans and establish himself in business, a joint petition was filed as provided for by the second sentence of 440.20(10), supra, reciting the 25% disability, controversy between the workman and carrier, anticipated future medical expenses, and the desire of Parker to move to New Orleans to engage in business. The lump sum of $4,000.00 was agreed upon. The deputy commissioner approved the proposed commutation on March 21, 1961, ordering that the carrier "Pay the employee in a lump sum of $4000.00 in complete discharge of the liability of the employer-carrier for future payment of compensation and remedial treatment as a result of the injuries which he sustained on or about September 16, 1960. The order approving the final settlement is not subject to modification under Florida Statutes 440.28."
Before the entry of the approval order the deputy commissioner referred the matter to the Rehabilitation Department of the Commission for investigation. See Rules of Procedure, in Workmen's Compensation Cases before the Florida Industrial Commission, 16(3c). Such investigation was made and its report and recommendations submitted to the deputy commissioner. The report reflects a sedulous labor of craftsmanship, thoroughly covering the salient economic points as relating to a lump sum settlement. Rule 16, supra, provides that "the stipulation [meaning the petition] and the report and recommendations of the Rehabilitation Department will be deemed a part of the record of the proceeding."
Parker appeared before the deputy commissioner and due to the brevity of the investigation the questions and answers are set forth in full, Deputy Commissioner Haines inquiring:
"Q. Mr. Parker, are you aware of the consequences of the lump sum settlement and stipulation which is before you now?
"A. Yes, sir.
"Q. You have been informed then that you will receive the sum of four thousand dollars?
"A. Yes, sir.
"Q. In complete settlement of the claim you have against the carrier?
"A. Yes, sir.
"Q. And that the Florida Industrial Commission then can no longer modify or change this?
"A. Yes sir I understand that.
"Q. You believe this is in your best interest?
"A. I do sir, yes, sir."
Apparently the approving order was based upon the joint petition, report of the Rehabilitation Department and the testimony of the employee. The $4,000.00 was paid and the matter was in a complete state of quiescence until on or about March 8, 1962, when the employee filed before the deputy commissioner a petition to modify, "requesting that the stipulation heretofore entered herein be set aside and be declared null and void * * *." An amendment was filed. Employee sought additional compensation. The controlling points raised will hereinafter be discussed. The deputy commissioner over the objections of the relators indicated that he intended to move forward in receiving evidence in support of the petition for modification, as amended. It is at this point the relators suggested prohibition to this court and rule issued. The Florida Industrial Commission filed its return, stating that "This Respondent agrees with Petitioners that they are entitled to a writ of prohibition * * *." The respondent employee in his return prays a discharge of the rule and that the suggestion as the predicate therefor be quashed.
We wish to say at the outset that from an examination of the record we do *639 not find any taint of fraud, mutual mistake, overreaching, nor any other reason which would invalidate the stipulation and order. Having so found, we are of the further opinion that the critical provision of 440.20 (10) is controlling and not 440.28, which permits modification.
Respondent employee in his brief raised several points covered in his petition for modification, as amended. The first appears in his brief within which he says: "It is obvious from the record that neither the stipulation nor the order complies with the prerequisites as set out by the Legislature in Section 440.20(10) and if these prerequisites are not met, it is obvious that the stipulation is subject to modification by the Florida Industrial Commission." With this contention the court cannot agree. 440.20(10) provides, inter alia, as relating to the authority of the deputy commissioner that "* * * if he finds that it is for the best interests of the person entitled to compensation a deputy commissioner may enter a compensation order approving and authorizing the discharge of the liability of the employer * * * by the payment of a lump sum * * *." (Italics for emphasis.) Prior to 1959 this responsibility was vested in the full commission and it had to "determine" whether or not the "wash out" was for the best interests of the employee. It is noted that the law as amended uses the word "finds." Webster defines the word as "To arrive at, as a conclusion; to determine and declare * * *." The finding to be made by the deputy commissioner under 440.20(10) is to be distinguished from 440.25(3) (c) which states that: "The order * * * shall set forth a statement of the findings of fact and other matters pertinent to the questions at issue * * *." (Italics for emphasis.)
Patently, the purpose of throwing safeguards around the employee in commutation cases is to insure him against his own improvidence, to the end that he will not experience the horrific metamorphosis of being Croesus on Saturday night and a mendicant on Monday morning.
In an interpretation of 440.25(3) (c) this court in Hardy v. City of Tarpon Springs, Fla., 81 So.2d 503, said: "The function of the reviewing authorities is to determine whether there is sufficient evidence to support the findings of fact and whether the law has been properly applied thereto by the Deputy Commissioner." This court in Straehle v. Bendix-We-Launder-Rite, Fla., 81 So.2d 657, held that an order under 440.25(3) (c) making no findings of fact was fatally defective. To the same effect are the following: Andrews v. Strecker Body Builders, Inc., Fla., 92 So.2d 521; Fischer v. John W. Thomson & Son, Inc., Fla., 92 So.2d 526; Josey v. Hooper Const. Co., Fla. App., 115 So.2d 183; and Patrylo v. Nautilus Hotel, Fla., 142 So.2d 279.
Under 440.25(3) (c) we have an adversary situation within which the deputy commissioner is called upon to determine whether or not claimant is covered by the Act, whether or not he is injured and the same was in the course of his employment, the degree or extent of the injury, its total or partial disabling effect, permanency or lack of permanency, the award to be made, and other essentially controlling factors. He is the trier of the facts, as we said in Sullivan v. Mayo, Fla.App., 106 So.2d 4. In this case the court observed: "In the case of a petition for lump sum payment, however, dealing only with the manner of payment as opposed to claimant's right to compensation, the statute provides that lump sum payment shall be made `whenever the commissioner determines that it is for the best interests of a person entitled to compensation.'" For the sake of emphasis the word "manner" was italicized.
The second sentence of 440.20(10) does not require nearly so much of the deputy commissioner. He is not called upon to set forth a statement of the findings of fact and other matters pertinent. In Sullivan v. Mayo, Fla.App., 121 So.2d 424, we indicated *640 that lump sum settlement orders "are not technically workmen's compensation orders." It is to be presumed that had the Legislature intended the same kind of finding in 440.20(10) as in 440.25(3) (c) it would have specifically spelled it out. It had for an example the case of New York Ship Building Co., v. Buchanan, et al., 84 N.J.Law 543, 87 A. 86 (1913), within which the Workmen's Compensation Act of 1911, P.L. 134, paragraph 20, relating to commutation settlements was involved. The Court said: "* * * the act requires the `determination' of the trial judge to be filed in writing, and that there shall be contained in this determination (or in the judgment entered thereon, according as we construe the statute), `a statement of facts as determined by the trial judge.' Clearly it is intended that the judgment in every phase shall be supported by a specific finding of fact which may be submitted to and considered by a court of review. * * * we are clearly of opinion that such a statement of facts should be contained in the written findings of the common pleas." In the New Jersey Act the lump sum settlement was conditioned upon the same being "in the interest of justice." Our terminology is somewhat different in that it requires the commutation to be "for the best interests of the person entitled to compensation." It is reasonable to assume that in the adoption of 440.20(10) the Legislature made a study of the commutation laws of our sister states, applying what it thought to be the best, and rejecting that which was incompatible with our labor philosophy in the workmen's compensation field.
In Olinde v. Arundel Corp. et al., La. App., 151 So. 439, dealing with a lump sum settlement the court said: "* * * it is not necessary that the joint petition presented to the court for approval be supported by proof beyond the verification of the parties to the facts therein alleged. On this point we find ourselves in accord with the learned district judge." 440.20(10) does not even require that the joint petition be verified.
As we have heretofore indicated, we do not feel constrained to set aside the release (stipulation or joint petition) between the employee and his employer. The employee is not in the position of R.L. Berry as set forth in Putnam Lumber Co. v. Berry, 146 Fla. 595, 2 So.2d 133. His is not the image of an ignorant, illiterate individual, debilitated in body and impaired in intellect, but on the contrary he had a high school education, managerial positions, and necessarily was called upon to make decisions in the business world. The fact that he did not have an attorney at law does not lead to the conclusion that he was imposed upon or any improper advantages taken of him.
We are not unmindful of the beneficent objectives of the compensation Act and the liberal construction which should be given to it in favor of the claimant, bearing in mind the words of Larson, 82.41 "* * * the big underlying issue is once more the choice between viewing a compensation claim as a sort of private tort right and recognizing the social-protection character of the compensation system." But the Act must be administered and interpreted in fairness to both sides. In Dotson v. Proctor & Gamble Mfg. Co., 102 Kan. 248, 169 P. 1136 (1918), the court said: "Workmen are not in any respect under guardianship or other disability; they and their employers are free agents; they may release their employers from liability for injuries on any agreed terms satisfactory to both. * * * And where no fraud has been practiced on the workman or on his employer, and no mutual mistake inheres in the contracts of settlement and release, the courts are bound to respect and enforce the settlements made by the parties, and are powerless to disturb such contracts of settlement."
In De Witt v. Miami Transit Co., Fla., 95 So.2d 898, this court in making reference to releases said: "If the rule were otherwise no release could be safely accepted in personal injury matters. The end result would be that all such claims would be forced into *641 litigation. Such a conclusion would be directly contrary to the policy of the laws favoring amicable settlement of disputes and the avoidance of litigation." We feel that this same policy should hold in release cases disposed of under 440.20(10).
The order of March 21, 1961, complied with the prerequisites of the second sentence of 440.20(10). Application for attorney's fee allowance is denied. See Sullivan v. Mayo, Fla.App., 106 So.2d 4.
The rule should be made absolute and it is so ordered.
ROBERTS, C.J., and DREW, O'CONNELL and CALDWELL, JJ., concur.