384 So.2d 156 (1980)
Willie EAST, Appellant,
v.
PENSACOLA TRACTOR & EQUIPMENT CO., INC. and Federated Mutual Ins. Co., Appellees.
No. QQ-313.
District Court of Appeal of Florida, First District.
April 16, 1980.
Rehearing Denied June 6, 1980.
*157 Joseph J. Finkelstein of Pelzner, Schwedock & Finkelstein, Miami, for appellant.
H. Edward Moore, Jr. of Sherrill, Moore & Hill, Pensacola, for appellees.
WENTWORTH, Judge.
The claimant/appellant, Willie East, was injured in 1975 and settled his worker's compensation claim by a judicially approved joint petition in March 1977. He was paid $16,000 for a stipulated 75% disability from loss of wage earning capacity, with $500 designated for "future medical." In February 1978, a hearing was held on his petition to set aside the "washout" settlement. Relief was denied on September 8, 1978, and this appeal followed.
The order on appeal finds that the carrier's failure to disclose medical ratings higher than the 40% recited in the agreement "would have been a material misrepresentation that would have substantially damaged the Claimant" if the carrier had "settled the claim based on the forty percent [anatomic] rating." Settlement was for earning capacity loss based on the forty percent rating and related factors, but the order finds no material misrepresentation because "given the knowledge of the one hundred percent rating of the leg, the $16,000 paid to the Claimant does not shock or even surprise the judicial conscience." We conclude on consideration of the evidence that the several misrepresentations and mistakes of fact cannot be regarded as harmless and that the petition should have been granted.
The Florida precedent noted by the deputy's order establishes that the statute must be administered in fairness to both sides and that the modification standards in § 440.28, Florida Statutes, do not apply to settlement agreements such as the one in this case. "[W]here no fraud has been practiced on the workman or on his employer, and no mutual mistake inheres in the contracts of settlement and release, the courts are bound to respect and enforce the settlements made by the parties, and are powerless to disturb such contracts of settlement." State v. Florida Industrial Commission, 151 So.2d 636 (Fla. 1963); cf., 3 Larson, Workmen's Compensation Law, §§ 82.60, 82.71 (1979 Supp.). However, that opinion of the court specifically noted the record showed no taint of mutual mistake or overreaching. It found the absence of counsel not material because claimant was educated, held management positions, and "necessarily was called upon to make decisions in the business world," so that "[h]is is not the image of an ignorant, illiterate individual."
The claimant in the present case, found by the judge to be an illiterate laborer, was not represented by counsel until after the 1977 settlement. The carrier's attorney assumed responsibility for explaining the terms of the settlement to the claimant, who simply acknowledged that he understood the effect of the document in response to inquiry from the judge. The attorney advised both the claimant and the judge at the hearing that a treating physician had rated the claimant's disability at 40% of the body as a whole. For the later stated reason that he did not consider it material, the attorney failed to mention that he knew the same doctor had also rated the disability at 100% of the leg, which would produce a higher compensation than the 40% rating, independent of earning capacity factors. We find no indication that either the judge or claimant was aware of that rating.
*158 The judge was also not advised, although the carrier had such knowledge, that the claimant was continuing to receive active medical treatment and had been hospitalized just prior to the washout hearing. The record indicates that treatment has continued to the present time and surgery is contemplated. It also indicates the judge was not advised that another doctor treating claimant had rated his disability at 60% of the body as a whole. Such facts assume significance in view of the settlement agreement's limitation of all future medical benefits to $500. Further significance attaches from the fact that the carrier's knowledge of current medical treatment was not communicated to its attorney, who testified that if he had been given that information, "I feel that the judge should be advised of that," as follows:
Q: As a matter of fact, did you realize that the Claimant had been seen by the authorized Carrier's physician, Dr. Flynn, twenty-nine times, the most recent one being March 15th of '77?
A: No, I did not know that... .
Q: And are you telling the Court that you were unaware of the fact that nine days before he was still being treated by Dr. Flynn?
A: That's right. I had  ...
Q: And you had no knowledge nor did Mr. Barnhill tell you that he was hospitalized in February of '77?
A: That's correct... .
Q: Basically, do you think the information to the effect that he was hospitalized in February of '77 and that he was actually still being treated and not discharged by the authorized physician, Dr. Flynn, as recently as March 15th of '77, would be important to relate to a judge who has to listen and approve the case on March 24th of '77?
A: If I had that information and was going to a washout at this time, yes, I would  I feel that the judge should be advised of that... .
Q: Did the judge have the file at the time of the hearing of the joint petition?
A: I don't know.
Q: Did you request the file to be sent over from Tallahassee or that a file be made up and sent over from Tallahassee?
A: I made no specific request with the bureau, no. I'm not sure how they do that.
The order on appeal provides particulars of the relevant facts:
The Claimant is a thirty-seven year old black male. He has always worked as an unskilled laborer... . [T]he Claims Supervisor for Federated Mutual Insurance Company, managed the claim for the Carrier.... The Carrier also engaged the services of Robert Martin, an independent adjuster with Crawford and Company to deal directly with the Claimant. The Carrier's records reflect that Dr. Flynn had hospitalized the Claimant on February 11, 1977... . At this point, the Carrier received word from Mr. Martin that the Claimant did not want to settle his case because Dr. Flynn had told the Claimant his disability rating was sixty percent. However, the Claimant changed his mind shortly thereafter and agreed to settle his claim for $16,000.00... .
During the time the Claimant was under the care of Dr. Flynn, he was not reclassified as temporarily and totally disabled even when hospitalized in February of 1977... . The Carrier contacted its Pensacola attorney ... and requested that he draw a Stipulation and Joint Petition which would completely settle the claim. Settlement with the Claimant was based on an agreed body of the whole rating of seventy-five percent. Although the attorney was aware of the one hundred percent impairment rating of the leg, this fact was not referred to in the Stipulation. Only the forty percent impairment rating of the whole body was mentioned. A hearing was arranged with the Judge of Industrial Claims to *159 take testimony to determine if the lump sum settlement was in the best interest of the Claimant. The attorney met with the Claimant and his mother at the Courthouse just before the scheduled hearing. He explained to the Claimant that the Stipulation and Joint Petition represented a final settlement of the case. He did not explain to the Claimant all of his options under F.S. 440 ...
At the hearing, the Judge of Industrial Claims explained the finality of the settlement to the Claimant. The Claimant understood that once he accepted the $16,000.00, his case was closed. He understood that even if he got worse, he could not come back and get any more money from the Carrier. The Claimant stated he planned to use the money to go to Pensacola Junior College to learn a trade. He did not mention, as he later testified, that he, in reality, planned to use the money for further treatment of his leg. The record reflects that the Judge knew only of the forty percent rating and did not know about the one hundred percent rating of the leg. The record is silent as to whether or not the Judge of Industrial Claims reviewed the file in accordance with WCRP 17(h) ... . (e.s.)
We conclude that the totality of circumstances presented shows either a mutual mistake on material facts or overreaching on the carrier's part, and that claimant should be allowed to prove entitlement to benefits foreclosed by the settlement agreement. State v. Florida Industrial Commission, supra. We also note from examination of the record on appeal that it does not reflect review by the judge of the bureau file (containing such materials as medical and other reports) before he approved the settlement agreement, as was expressly required by § 440.20(10), Florida Statutes, and W.C.R.P. 17(h), then applicable. If such an oversight occurred, it would apparently be regarded as fundamental error invalidating the agreement and order. Farrand Corp. v. McKenney, IRC Order 2-3324 (Jan. 16, 1977).
The order is accordingly reversed and the cause remanded for further proceedings.
ROBERT P. SMITH, Jr., and LARRY G. SMITH, JJ., concur.

ON MOTION FOR REHEARING AND/OR CLARIFICATION
PER CURIAM.
Our opinion in this case should not be read as casting aspersion upon appellees' present counsel, who was not involved in the 1977 joint petition proceedings in this case.
Rehearing is denied.
ROBERT P. SMITH, JR., LARRY G. SMITH and WENTWORTH, JJ., concur.