470 So.2d 865 (1985)
David L. CORDELL, Appellant,
v.
PITTMAN BUILDING SUPPLY and General Accident Group, Appellees.
No. AY-478.
District Court of Appeal of Florida, First District.
June 14, 1985.
*866 Barry Silber of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
Robert D. Bell, Pensacola, for appellees.
BOOTH, Judge.
Claimant appeals from a workers' compensation order denying with prejudice his petition to set aside an order, dated December 13, 1982, which approved a stipulation and joint petition for settlement. The issue on appeal is whether the deputy commissioner erred in refusing to set aside the order approving the stipulation and joint petition for settlement in view of his finding that he lacked knowledge of the true and material facts regarding claimant's injury at the time he originally approved the stipulation and petition.
Claimant, an illiterate manual laborer, was 24 years old when he sustained a compensable injury to his back on April 27, 1981. On May 5, 1981, a laminectomy was performed for the removal of two intervertebral discs. The neurosurgeon, Dr. Thomas G. Holmes, provided follow-up care until July 13, 1981. The record indicates that claimant was next treated on June 15, 1982, by Dr. Wendell Newcomb, an orthopedic surgeon, who hospitalized claimant from August 30, 1982, through September 10, 1982, for a complete checkup. In discussing the results of the testing, Dr. Newcomb stated:
It is my impression that this individual will have to be rehabilitated. He cannot read or write, and he is not going to do anything but hard work; and it is going to be impossible for him to do this. In other words, he is a lost individual unless he shows some initiative. At the present time he states that he lives from his compensation and the fact that his wife has a small cleaning job.
In other words, it is a pathetic case that unless he can be motivated to do something, he will remain in the present *867 state. I think this boy has had a laminectomy at two levels, and after that he can't [sic] hardly be expected to do hard, manual labor. He is kind of up against it because he is not educated.
Dr. Goldwater, the consulting psychiatrist, recommended that claimant be referred to a pain clinic. On about September 7, 1982, the carrier received Dr. Newcomb's report, which stated that he felt claimant would have been temporarily totally disabled for about one year following his May 5, 1981 surgery, and thereafter, claimant would have incurred at least a 20 percent permanent partial impairment. On October 13, 1982, Dr. Newcomb again advised the carrier that claimant should have about a year of temporary total disability after the date of the surgery and would be given about a 20 percent permanent partial impairment.
The employer/carrier provided medical and disability compensation benefits until September 11, 1981, and then reinstated the benefits until December 22, 1981, at which time the benefits were terminated. Claimant retained counsel, John Kirtz, but no workers' compensation claim was filed by him or by his partner, Barry Rhodes, who, it appears, subsequently assumed representation of claimant. On December 3, 1982, the claimant, through Mr. Rhodes, and the employer/carrier entered into a joint petition for lump-sum settlement and release from liability for future payments of compensation, other than for medical expenses, in the amount of $5,806.84.
The deputy commissioner approved the joint petition, without hearing, by order dated December 13, 1982. Later, on November 23, 1983, claimant, through yet another new counsel, Barry Silber, his appellate counsel herein, petitioned to set aside the order and joint petition for settlement, alleging mutual mistakes of material facts and/or overreaching and/or material misrepresentation of fact by omission and/or concealment. After a hearing, the petition to set aside was denied with prejudice on April 6, 1984. The joint petition for settlement did not disclose: (1) that claimant is illiterate; (2) the extent of claimant's physical limitations; (3) that claimant has a permanent impairment; (4) that claimant may need psychiatric treatment for pain; (5) that claimant had received medical treatment after July 13, 1981 by Dr. Newcomb, who described the claimant's case as "pathetic;" and (6) that claimant would need rehabilitation to give him an opportunity to reenter the competitive job market.
In his order denying claimant's petition to set aside the stipulation and joint petition for settlement, the deputy commissioner made the following findings:
With no information regarding the claimant's recent treatment by Dr. Newcomb and it appearing that the Claimant had not needed much care since he last saw Dr. Holmes on July 13, 1981, the deputy commissioner approved the settlement by an Order dated December 13, 1982. Had the truth been revealed concerning the Claimant's recent care and that Dr. Newcomb had described the Claimant's case to be "pathetic", the $5,806.84 settlement would not have been approved.
... . There is little doubt that the Order would have been set aside had the Claimant not been represented by counsel. East v. Pensacola Tractor & Equipment Co., Inc., 384 So.2d 156 (1st DCA Fla. 1980)... . The critical facts in this case were fully known by both parties. The only person in the dark concerning the true nature of the claimant's condition was the deputy commissioner.
Despite these findings, the deputy denied the petition.
Section 440.20(12)(a), Florida Statutes (1983), provides:
It is the stated policy for the administration of the workers' compensation system that it is in the best interests of the injured worker that he receive disability or wage-loss payments on a periodic basis. Lump-sum payments in exchange for the employer's or carrier's release from liability for future payments of compensation, other than for medical expenses, shall be allowed only under special *868 circumstances, as when the claimant can demonstrate that lump-sum payments will definitely aid in his rehabilitation or are otherwise clearly in his best interests and that lump-sum payments will avoid undue expense or undue hardship to any party, or that such claimant has removed himself or is about to remove himself from the state. In no case shall a lump-sum payment be allowed in exchange for the release of an employer's or carrier's liability for future medical expenses. In no case shall a lump-sum settlement be allowed until 6 months after the date of maximum medical improvement has been reached. [emphasis added]
We find that the parties' failure to present material facts to the deputy in their stipulation and joint petition for settlement prevented the deputy from being able to perform his duty under Section 440.20(12)(a), Florida Statutes, supra, which requires a determination by the deputy that a lump-sum settlement is clearly in the claimant's best interests. In Steele v. A.D.H. Building Contractors, Inc., 174 So.2d 16, 19 (Fla. 1965), the Supreme Court stated:
One entering a stipulation relative to present facts should be sure of his ground before he executes the agreement and subsequently reaps benefits from it. If he is unsure, he should consult counsel at his elbow or should simply decline and rely on the determination of the deputy and the full commission. Such an agreement should neither be ignored nor set aside in the absence of fraud, overreaching, misrepresentation or withholding facts by the adversary or some such element as would render the agreement void. [emphasis added]
In the instant case, although claimant was represented by counsel and the deputy did not find fraud, misrepresentation, overreaching, concealment, or a mutual mistake of material facts between the parties,[1] the parties' failure to inform the deputy of the facts necessary for a true evaluation of the circumstances bearing on claimant's condition prevented the deputy from being able to perform his statutory duty in furtherance of the public policy expressed in Section 440.20(12)(a).
Courts are properly reluctant to set aside a stipulation entered into by parties and previously approved by the court. However, the findings of the deputy in this case show an overwhelming lack of essential information and a resulting total inability of the deputy to perform his statutory duty. Under such circumstances, strong public policy considerations prevail so that presence of counsel in the case does not in and of itself preclude the deputy's consideration of a proper petition to set aside an order approving a stipulation and joint petition for settlement. It is this statutory duty and the public policy represented thereby which distinguish settlements under Chapter 440 from most other settlements. As stated by Larson:[2]
[T]he entire compensation system has been set up and paid for, not by the parties, but by the public. The public has ultimately borne the cost of compensation protection in the price of the product, and it has done so for the specific purpose of avoiding having the disabled victims of industry thrown on private *869 charity or public relief. To this end, the public has enacted into law a scale of benefits that will forestall such destitution. It follows, then, that the employer and employee have no private right to thwart this objective by agreeing between them on a disposition of the claim that may, by giving the worker less than this amount, make him a potential public burden. [emphasis added; footnote omitted]
The order denying the petition to set aside the prior order approving the stipulation and joint petition for settlement is reversed, the order approving the settlement is vacated, and the cause is remanded for further proceedings in accordance herewith.
ERVIN, C.J., and THOMPSON, J., concur.
NOTES
[1] Compare: East v. Pensacola Tractor & Equipment Co., Inc., 384 So.2d 156 (Fla. 1st DCA 1980), reversing an order denying claimant's petition to set aside a lump-sum agreement because the totality of the circumstances presented showed either a mutual mistake of material facts or overreaching on the carrier's part, wherein one of the circumstances presented was that claimant, an illiterate laborer, was not represented by counsel at the time the lump-sum settlement was approved; and D'Amico v. Marina Inn and Yacht Harbor, Inc., 444 So.2d 1038 (Fla. 1st DCA 1984), reversing an order denying claimant's petition to set aside an approved lump-sum settlement agreement on the basis that, according to the record, maximum medical improvement had not been reached six months prior to the settlement as required by Section 440.20(12)(a), Florida Statutes, wherein, at the time the settlement agreement was approved, claimant was not represented by counsel.
[2] 3 A. Larson, The Law of Workmen's Compensation § 82.41 (1983).